### DEHAN et al. v. HOTEL AND RESTAURANT EMPLOYEES AND BEVERAGE DISPENSERS, LOCAL UNION NO. 183, et al.

No. 4811.

Court of Appeal of Louisiana. Second Circuit.

March 8, 1935.

Thos. W. Robertson, of Shreveport, for appellant.

Hardin & Coleman, T. Overton Brooks, and Pike Hall, all of Shreveport, for appellee Central Trades & Labor Council.

DREW, Judge.

Plaintiffs, for a cause of action, filed the following petition:

"The petition of Mrs. H. Dehan, John Dehan, Edward Dehan and Julia Dehan, respectfully shows:

"1. That they are residents of Shreveport, Caddo Parish, Louisiana.

"2. That they are the owners and operators of the Majestic Cafe, located on Milam Street, Shreveport, Caddo Parish, Louisiana, which business they have owned and oper-ated for a number of years, and which is a thriving restaurant business in said city.

"3. That the Cooks & Waiters Local No. 183 or Hotel and Restaurant Employees and Beverage Dispensers Local Union No. 183, is an unincorporated voluntary association domiciled in the city of Shreveport and is a union organization of organized labor, of which Lawrence. Galloway is the president of the local union, and that the Central Trades & Labor Council is an unincorporated voluntary association domiciled in the city of Shreveport, of which John Howatt is president.

"4. That your petitioners operate their said business in a legal manner and as a high-class restaurant should be operated, and are paying and have always paid the prevailing wage scale paid by the restaurant industry generally in Shreveport.

"5. That within the last few weeks the Cooks & Waiters and other employees of restaurants in Shreveport have organized a local union, No. 183, and are endeavoring to compel your petitioners and other restaurant owners and operators to pay a higher wage scale than heretofore paid, and a wage scale which your petitioners cannot pay and successfully operate their said business.

"6. That your petitioners have complied with the Restaurant Code of the National Recovery Administration and are paying the scale of wages required thereby, which is higher than the scale of wages previously paid by them, and are making the deduction of $3.00 per week for meals from the wages of said employees under said Act, as is permitted by the Restaurant Code and as they have always done prior to June 16, 1933, and as was the prevailing custom prior to said date, which was the date of the inauguration of said Restaurant Code, and your petitioners are in every way endeavoring to comply with said Code.

"7. That your petitioners are perfectly willing to employ members of the local cooks and waiters union and have never objected to any of their employees being members of said union, but they are unwilling and unable to be coerced into paying wages which are more than their business justifies them in paying, and as a result two of their employees have recently left their employ who were members of the local Cooks and Waiters Union.

"8. That your petitioners have no objection to the employment of union labor, pro-

vided they will accept employment at the wage that petitioners can afford to pay and they have never declined to employ or discharged anyone because of his affiliation with any organization of organized labor, and that they are not unfair to organized labor, but on the contrary, have done everything within their power to be fair to it in their dealings with labor and in all other respects.

"9. That they are helping to maintain a living wage for those who labor for them, and are paying the wages prescribed in the Restaurant Code of the National Recovery Administration.

"10. That, notwithstanding these facts, the officers and members of the Cooks & Waiters Local No. 183 or Hotel and Restaurant Employees and Beverage Dispensers Local Union No. 183 and the Central Trades and Labor Council began, without any cause whatever, on Friday, December 1, 1933, and have continued since that date an organized boycotting and picketing of their said place of business on Milam Street in the city of Shreveport, and are engaging in the following unlawful practices: that they constantly maintain on the sidewalk directly in front of their place of business two or more persons who stop and hand out to every passerby on the sidewalk, circulars, reading as follows:

" 'Stop and Read.

N R A     Are you willing to help maintain
(Emblem)     a living wage for those
We do our        who labor?
Part.

If so, patronize those who help support it.

The Majestic Cafe Does Not, and is Unfair to Organized Labor.

The Cooks & Waiters Local No. 183, solicits your support and patronage for better workmanship and living wages.

Sponsored by Central Trades & Labor Council, Affiliated With American Federation of Labor.'

"Copy of which circular is hereto attached and made a part hereof, which said pickets endeavor by every means possible to dissuade patrons and customers of their said restaurant from entering and patronizing the same.

"11. That the said Cooks & Waiters Local No. 183 or the Hotel and Restaurant Employees and Beverage Dispensers, Local Union No. 183, and the said Central Trades and Labor Council, also constantly maintain in front of your petitioners' place of business on the sidewalk a long tandem bicycle, bearing a large sign in conspicuous letters reading substantially the same as the circular above quoted.

"12. That the avowed purpose of the picketing and boycotting of their said place of business and of the distribution of said circulars and of the maintenance of said sign is to harass your petitioners and prevent customers from entering and patronizing their place of business, and to destroy their business and all profit therefrom, and to coerce your petitioners into adopting the union scale of wages and to annoy, embarrass, and humiliate the patrons, and would-be patrons, and customers of your petitioners who have always patronized your petitioners and who would continue to do so, but for the maintenance of the illegal picketing, boycotting and placarding of their said place of business, as above set out.

"13. That the effects of the acts of the said parties have been to seriously curtail and destroy the business of your petitioners, since the pickets maintain a clock system by which they check the number of customers who they divert from your petitioners' place of business, and the result of their said illegal acts are shown in the fact that between the hours of 11 A. M. to 2 P. M. on Saturday, December 2d, 142 less customers entered their place than entered between the same hours on Friday December 1st, and that on Sunday, December 3rd, 102 fewer customers entered their place than entered it prior to the picketing of their said place of business.

"14. That the said members of the said Cooks & Waiters Local No. 183 and Hotel and Restaurant Employees and Beverage Dispensers Local Union No. 183 and the members of the Central Trades and Labor Council are so engaging in said acts unlawfully and wilfully and maliciously and with the deliberate intent to injure and destroy your petitioners' property and business, which consists of their right legally to earn a living in the operation of the restaurant business in the city of Shreveport, and that by reason of said practices the defendants are now and have been continuously since December 1, 1933, unlawfully, wilfully and maliciously intimidating persons who desired to enter your petitioners' business for the purpose of patronizing and purchasing meals from your petitioners, which said acts are

deterring and have deterred such persons from entering and patronizing your petitioners' place of business and are calculated and intended to give notice and does give notice to all persons passing petitioners' place of business, or intending to patronize the same, that the said place of business is under boycott, and that its patronage is opposed by organized labor, and as a result of the presence of said pickets and of the unlawful, wilful and malicious maintonance of said picket patrol, and of said placard, and of the distribution of said circulars and of the implied threats, and intimidation, as aforesaid, by the defendants, a great many of your petitioners' patrons have been intimidated and as a consequence have discontinued to patronize and will continue to do so as long as the said pickets and placards are maintained in front of petitioners' place of business and as long as the boycott continues, reducing the daily receipts of petitioners' place of business by the 'sum of least $50.00 per day, and that your petitioners' property is injured and destroyed to that extent by the said acts of said defendants herein.

"15. That the said officers and members of the Cooks and Waiters Local No. 183 and Hotel and Restaurant Employees and Beverage Dispensers, Local Union No. 183, and the Central Trades and Labor Council threaten to continue their said unlawful, wilful and malicious acts and conduct and are so continuing at the present time.

"16. That the said acts of said defendants hereinabove set forth not only constitute illegal acts themselves and an unlawful denial of the right of petitioners to conduct their business and engage in a livelihood, but also constitute a combination on defendants' part of an unlawful agreement in restraint of trade or commerce in the State of Louisiana, such as is expressly declared to be illegal by the Statutes of Louisiana, and that your petitioners have both implied and express rights to relief by injunction against said acts.

"17. That the said acts on the part of said defendants have caused and are causing your petitioners irreparable injury, as it is impossible to ascertain the exact amount of loss which they are causing to your petitioners, and they are committing damage and injury by their said acts, which, by its very nature, is incapable of being accurately determined in money, and that they have no adequate remedy other than by injunction to prevent and restrain the said defendants from further continuing said actions.

"18. That the said Cooks and Waiters Local No. 183 or Hotel and Restaurant Employees and Beverage Dispensers, Local Union No. 183, and their officers and members, and the Central Trades and Labor Council and its officers and members, are by the above named acts wrongfully depriving your petitioners of their property by wrongful act and without due process of law, and are taking and damaging their private property, to-wit; their business and means of livelihood and the goodwill of their business, and its good reputation, without just and adequate compensation and by wrongful act, and that your petitioners are entitled to a writ of injunction against all of said defendants prohibiting them from doing any and all of the above described wrongful acts.

"19. That your petitioners hereby reserve their rights hereafter to sue all of said defendants for damages, and that the value of the loss and damage occasioned to them by the defendants' actions exceeds $1,000.00 and is less than $2,000.00.

"Wherefore, premises considered, your petitioners pray for service and citation hereof upon the Hotel and Restaurant Employees and Beverage Dispensers, Local Union No. 183 or Cooks and Waiters Local No. 183, an unincorporated association of the State of Louisiana and Parish of Caddo, through Lawrence Galloway, the president of the local Union or through any of its members, and for service and citation upon the Central Trades and Labor Council, through its president, John Howatt, or its officers or any of its members, and particularly upon those members of either organization who may be engaged in the actual picketing of petitioners' property, and the distribution of circulars nearby; and that a rule nisi issue herein ordering and commanding the said defendants and officers and members to show cause at a date and day to be fixed by the Court why a writ of injunction should not issue herein, restraining them and each of their officers and members of said organizations, their agents and employees, from in any manner interfering with or hindering or obstructing petitioners and each of them, whether by picketing or placarding or distribution of circulars, or by advertisements, or otherwise, in the free use and enjoyment of their property, property rights, their business and conduct thereof, namely; the Majestic Cafe on Milam Street, City of Shreveport, and from entering therein or distributing the above described circulars, or any advertisements naming your petitioners' cafe, on the streets of the city of Shreveport or in the vicinity of your peti-

tioners' place of business; and from further displaying any sign, advertisement or placard similar to said circulars on any bicycle or otherwise on the streets of the city of Shreveport or in the vicinity of said place of business of petitioners; and from in any manner inducing by any species of threat, intimidation, or in any other way, any person or persons from entering your petitioners' place of business or patronizing the same; and from preventing or attempting to prevent by any species of entreaty the patrons or prospective patrons or any other person or persons from trading with your petitioners; and from harassing or annoying them; or from displaying in any manner placards or banners or other emblems or insignia containing open or covert threats or intimidations or the like to the annoyance of petitioners' patrons or prospective patrons or other person or persons while going about their business to or from or with petitioners, and from parading in front of or congregating, whether singly or collectively, in the vicinity of the entrance to or at or near the place of business of petitioners for any of the above purposes; and from engaging in what is commonly known or designated as picketing or establishing or maintaining a picket patrol, whether singly or collectively, in front of the entrances of the said petitioners' place of business, namely; the Majestic Cafe on Milam Street, city of Shreveport, or adjacent thereto or in the vicinity thereof.

"That immediate and irreparable loss, injury and damage is resulting and will result to your petitioners before a hearing can be had on the above application for a rule and your petitioners pray that a temporary restraining order issue against the defendants and each of them upon your petitioners furnishing bond in such amount as the court may fix with sureties as provided by law.

"Your petitioners further pray for all orders and decrees necessary for full, general and equitable relief."

The lower judge signed the following order:

"Considering the above and foregoing petition and affidavit and attached documents, it is ordered that a rule issue herein returnable before this court at 10 o'clock A. M., on Thursday the 14th day of December, 1933, at Shreveport, Louisiana, ordering and directing the defendants, the Cooks & Waiters Local Union No. 183 or Hotel and Restaurant Employees and Beverage Dispensers, Local Union No. 183 and the Central Trades and Labor Council, their officers and members, agents and employees, to show cause if any they have before this court why a writ of injunction as prayed for herein should not issue upon petitioners giving bond, as the law requires.

"In view of the fact that the alleged injury is presently taking place and is hourly continuing with alleged resultant loss to the petitioners and, whereas a cessation of the acts complained of would not result in any financial loss to the persons alleged to be engaged therein, the determination of the legal issues herein involved may be awaited by both parties without financial injuries to either, it is ordered that a temporary restraining order issue herein to prevent immediate and irreparable loss and damage, and pending a hearing on this application upon plaintiffs furnishing bond in the sum of $500.00, conditioned according to law, and the said defendants, Cooks & Waiters Local No. 183 or Hotels and Restaurant Employees and Beverage Dispensers Local Union No. 183 and the Central Trades and Labor Council, and their officers and members, agents and employees, be and they are hereby temporarily restrained and enjoined from in any manner interfering with or hindering or obstructing petitioners and each of them, whether by picketing or placarding or distribution of circulars or by advertisement or otherwise, in the free use and enjoyment of their property, property rights, their business and conduct thereof, namely; the Majestic Cafe on Milam Street, city of Shreveport, and from entering therein or distributing the above described circulars or any advertisements, naming your petitioners' cafe, on the streets of the city of Shreveport or in the vicinity of your petitioners' place of business; and from further displaying any sign, advertisement or placard similar to said circulars on any bicycle or otherwise on the streets of the city of Shreveport or in the vicinity of said place of business of petitioners; and from in any manner inducing by any species of threat, intimidation, or in any other way, any person or persons from entering your petitioners' place of business or patronizing the same; and from preventing or attempting to prevent by any species of entreaty the patrons or prospective patrons or any other person or persons from trading with your petitioners; and from harassing or annoying them; or from displaying in any manner placards, advertisements, or banners or other emblems or insignia containing open or covert threats or intimidations or the like to the annoyance of petitioners' patrons or prospective patrons or other person or persons while going about

their business to or from or with petitioners, and from parading in front of or congregating, whether singly or collectively, in the vicinity of the entrance to or at or near the place of business of petitioners for any of the above purposes; and from engaging in what is commonly known or designated as picketing or establishing or maintaining a picket patrol, whether singly or collectively, in front of the entrances of the said petitioners' place of business, namely; the Majestic Cafe on Milam Street, city of Shreveport, or adjacent thereto, or in the vicinity thereof; this order to expire at 10 A. M., December 14, 1933.

"It is finally ordered that service and citation hereof be made as required by law.

"Thus done and signed at Shreveport, Louisiana, this 5th day of December, 1933.

"T. F. Bell, District Judge."

The defendants Hotel and Restaurant Employees and Beverage Dispensers, Local Union No. 183, filed the following answer to the rule nisi:

"To the Honorable, the Judge of the First Judicial District Court in and for Caddo Parish, Louisiana:

"Now in to your Honorable Court, through their undersigned counsel, come one of the defendants, namely; the Hotel and Restaurant Employees and Beverage Dispensers, Local Union No. 183, of Shreveport, Louisiana, (also styled in plaintiffs' petition as Cooks & Waiters Local No. 183, of Shreveport, Louisiana), and hereafter, where the word 'defendants' is used, it is intended to cover both names, under which plaintiffs style defendants in their petition, though the first name is the proper and legal one, with respect represents:

"I. Answering Article 1 of plaintiffs' petition, defendants admit same.

"II. Answering Article 2 of plaintiffs' petition, defendants admit same.

"III. In answer to Article 3 of plaintiffs' petition, defendants admit all that portion of same applying to them, but stand mute to all allegations referring to the Central Trades and Labor Council of Shreveport, Louisiana.

"IV. Defendants deny the allegations of Article 4 of plaintiffs' petition.

"V. Defendants, answering Article 5 of the petition, deny all that portion of said Article 5, except such as is hereinafter admitted. They admit the organization of their local and admit that they are endeavoring to have plaintiffs observe the Code of the National Recovery Administration as applied to the cafes and restaurants, and to enforce the hours of work, scale of pay and wages, prescribed by the said N. R. A. Restaurant Code, but which plaintiffs have signally failed to do.

"VI. Defendants admit that plaintiffs are displaying the Blue Eagle emblem of the National Recovery Administration, but they deny specifically and categorically each and every other allegation of Article 6 of plaintiffs' petition.

"VII. Defendants deny all the allegations of Article 7 of the petition, except that two of their members left the employ of plaintiffs due to the failure of plaintiffs to abide by, observe and live up to the wage scale and other regulations of the N. R. A. Restaurant Code.

"VIII. Defendants deny the allegations of Article 8 of the petition.

"IX. Defendants deny all the allegations of Article 9 of the petition.

"X. Defendants deny the allegations of Article 10 of the petition, as written, and especially deny that the purported quotation of the handbill is either complete or correct. Defendants attach hereto a correct sample of the handbill being handed out by the defendants at the time the injunction was filed and issued. Defendants admit that said handbills were passed out on the sidewalk to passersby, but deny that any fraud or violence was used in handing out said handbills; further deny that anything in the furtherance of defendants' cause was done, other than to peaceably and lawfully hand out said handbills on the sidewalk near plaintiffs' cafe and that same was done both because of the existence of a wage and labor dispute with defendants and because plaintiffs had persistently and continually failed and refused to observe the rules, regulations, hours of labor and wage scale prescribed by the Restaurant Code of the National Recovery Administration and had refused to recognize collective bargaining provided by the National Recovery Act.

"XI. Your defendants admit the allegations of Article XI of said petition and assume the sole responsibility therefor.

"XII. Defendants deny the allegations of Article 12, as written, but admit that they did hand out handbills near said restaurant for the reasons set forth in the preceding article of this answer.

"XIII. Defendants deny the allegations of Article 13 for lack of sufficient information, but especially admit that they kept a check

or clock system of checking those entering said place of business.

"XIV. Defendants deny the allegations of Article 14, as written, but aver that the facts are correctly set forth in Article 10 of this answer.

"XV. Defendants deny the allegations of Article 15, but aver that they would have continued a peaceable and lawful picketing or handing out handbills without fraud or violence.

"XVI. Defendants deny the allegations of Article 16 of plaintiffs' petition.

"XVII. Defendants deny the allegations of Article 17 of plaintiffs' petition.

"XVIII. Defendants deny the allegations of Article 18 of plaintiffs' petition.

"XIX. Defendants deny the allegations of Article 19 of plaintiffs' petition.

"XX. Defendants deny that plaintiffs are entitled to the relief sought in the prayer of their petition.

"XXI. Your defendants deny that plaintiffs were entitled to any temporary restraining order or are entitled to any writ of injunction and aver that the rule herein issued should be vacated, cancelled and recalled.

"XXII. Your defendants, now assuming the position of plaintiffs in reconvention, aver that the illegal issuance of said restraining order has damaged them in the full sum of $500.00, itemized as follows and for this to-wit:

"Item 1. Attorney's fees for dissolving said restraining order, the sum of $450.00;

"Item 2. For loss of time of the officers and members of defendants' Union and for humiliation, embarrassment, expense and inconvenience, the sum of $50.00.

"XXIII. Defendants reserve all legal rights to sue for such other damages as may have been caused defendants.

"Wherefore, defendants pray that all the demands of plaintiffs be rejected; that the restraining order issued herein be vacated, recalled and cancelled; that defendants in reconvention do have and recover judgment against plaintiffs, Mrs. H. Dehan, John Dehan, Edward Dehan and Julia Dehan, and the Majestic Cafe, in solido, in the full amount of $500.00, as herein set forth, with legal interest from the date this answer is filed until paid, and that all cost of these proceedings be paid by plaintiffs.

"Prays further for all necessary orders and for general relief."

Defendant Central Trades and Labor Council filed a motion to dissolve the temporary restraining order, disclaiming any knowledge or part in the controversy between the plaintiffs and the other defendant. The Central Trades and Labor Council also filed an answer disclaiming any knowledge or interest whatsoever in the controversy between the plaintiffs and defendant.

After trial was had, it was agreed that the evidence taken on the rule nisi should be likewise considered on the merits of the case and the lower court then rendered the following judgment:

"This cause coming on for trial after issue joined, same was regularly taken up in Open Court on the return date of the rule issued herein and tried, evidence adduced, and closed, and the law and evidence adduced on trial being in favor of the plaintiffs, Mrs. H. Dehan, John Dehan, Edward Dehan and Julia Dehan, and against defendant, Hotel and Restaurant Employees and Beverage Dispensers, Local Union No. 183, for the reasons given in the written opinion filed herein by the District Judge, it is therefore,—

"Ordered, adjudged and decreed that there be judgment herein in favor of said plaintiffs and against the said Hotel and Restaurant Employees and Beverage Dispensers, Local Union No. 183, maintaining and perpetuating the temporary restraining order and temporary injunction issued herein as to the Hotel and Restaurant Employees and Beverage Dispensers, Local Union No. 183, its officers, agents, members and employees, and permanently enjoining them and each of them from in any manner interfering with or hindering or obstructing plaintiffs and each of them, whether by picketing or placarding or distribution of circulars or by advertisement, or otherwise, in the free use and enjoyment of their property, property rights, their business and conduct thereof, namely; the Majestic Cafe on Milam Street, city of Shreveport, and from distributing circulars such as were distributed herein or any advertisements, naming plaintiffs' cafe, on the streets of the city of Shreveport, or in the vicinity of plaintiffs' place of business; and from further displaying any sign, advertisement, or placard similar to said circulars on any bicycle or otherwise on the streets of the city of Shreveport or in the vicinity of said place of business of plaintiffs; and from in any manner preventing by any species of public threat, persuasion, intimidation, duress, or in any other way, any person or per-

sons from entering plaintiffs' place of business or patronizing the same; and from preventing or attempting to prevent by any species of entreaty the patrons or prospective patrons or any other person or persons from trading with plaintiffs; and from harassing or annoying plaintiffs or their patrons and customers; or from displaying in any manner placards, advertisements or banners or other emblems or insignia containing open or covert threats or intimidations or the like to the annoyance of plaintiffs' patrons or prospective patrons or other person or persons while going about their business to or from or with plaintiffs; and from parading in front of or congregating, whether singly or collectively, in the vicinity of the entrance to or at or near the place of business of petitioners for any of the above purposes; and from engaging in what is commonly known or designated as picketing or establishing or maintaining a picket patrol, whether singly or collectively, in front of the entrance to plaintiffs' place of business, namely; the Majestic Cafe on Milam Street, city of Shreveport, or adjacent thereto or in the vicinity thereof.

"It is further ordered, adjudged and decreed that plaintiffs' suit as to the Central Trades and Labor Council be dismissed as of non-suit, and that the reconventional demand and claim of all defendants for attorneys' fees be rejected and denied, as of non-suit, as to Central Trades and Labor Council, and be rejected and denied as to the other defendant, Hotel and Restaurant Employees and Beverage Dispensers, Local Union No. 183.

"It is further ordered, adjudged and decreed that the defendant Hotel and Restaurant Employees and Beverage Dispensers, Local Union No. 183, pay all cost of this suit.

"Thus done, rendered, read aloud and signed in Open Court at Shreveport, Louisiana, this the 10th day of January, 1934.

"Robert Roberts, District Judge."

From this judgment, the defendant Hotel and Restaurant Employees and Beverage Dispensers, Local Union No. 183, appealed to this court. Neither the Central Trades and Labor Council nor plaintiffs have appealed; therefore, we are not concerned with the case in so far as it applies to the Central Trades and Labor Council of Shreveport.

The judgment was rendered and signed on January 10, 1934. Through no fault of this court, the case was delayed in being presented here until recently. Since the rendering of the judgment by the lower court, Act No.

203 of the Legislature of 1934 has been enacted and is the governing law today in this state in regard to the issuance of injunctions in labor disputes. The pertinent parts of Act No. 203 of 1934 of this state are, with a very few changes, a duplicate of similar sections in what is known as the Labor Injunction Act of Congress, dated March 23, 1932 (sections 1–15) as given in USCA, title 29, Labor (sections 101–115). Section 104 of this last-cited act reads as follows:

"*Enumeration of specific acts not subject to restraining orders or injunctions.* No court of the United States shall have jurisdiction to issue any restraining order or temporary or permanent injunction in any case involving or growing out of any labor dispute to prohibit any person or persons participating or interested in such dispute (as these terms are herein defined) from doing, whether singly or in concert, any of the following acts: * * *

"(e) Giving publicity to the existence of, or the facts involved in, any labor dispute, whether by advertising, speaking, patrolling, or by any other method not involving fraud or violence."

Section 3 of Act No. 203 of 1934 of Louisiana reads as follows:

"No court, nor any judge or judges thereof shall, or, have jurisdiction to, issue any restraining order or temporary or permanent injunction which in specific or general terms prohibits any person or persons from doing, whether singly or in concert, any of the following acts: * * *

"(e) Giving publicity to and obtaining or communicating information regarding the existence of, or the facts involved in, any dispute, whether by advertising, speaking, patrolling any public street or any place where any person or persons may lawfully be, without intimidation or coercion, or by any other method not involving fraud, violence, breach of the peace, or threat thereof."

The definition of "labor dispute" in the federal act (section 13 [29 USCA § 113]) is as follows:

"When used in this chapter, and for the purposes of this chapter—

"(a) A case shall be held to involve or to grow out of a labor dispute when the case involves persons who are engaged in the same industry, trade, craft, or occupation; or have direct or indirect interests therein; or who are employees of the same employer; or who are members of the same or an affiliated organization of employers or employees;

whether such dispute is (1) between one or more employers or associations of employers and one or more employees or associations of employees; (2) between one or more employers or associations of employers and one or more employers or associations of employers; or (3) between one or more employees or associations of employees and one or more employees or associations of employees; or when the case involves any conflicting or competing interests in a 'labor dispute' (as hereinafter defined) of 'persons participating or interested' therein (as hereinafter defined).

"(b) A person or association shall be held to be a person participating or interested in a labor dispute if relief is sought against him or it, and if he or it is engaged in the same industry, trade, craft, or occupation in which such dispute occurs, or has a direct or indirect interest therein, or is a member, officer, or agent of any association composed in whole or in part of employers or employees engaged in such industry, trade, craft, or occupation.

"(c) The term 'labor dispute' includes any controversy concerning terms or conditions of employment, or concerning the association or representation of persons in negotiating, fixing, maintaining, changing, or seeking to arrange terms or conditions of employment, regardless of whether or not the disputants stand in the proximate relation of employer and employee."

In Act No. 203 of 1934 of this state, the definition of "labor dispute" is as follows:

"Section 12. When used in this Act, and for the purposes of this Act—

"(a) A case shall be held to involve or to grow out of a labor dispute when the case involves persons who are engaged in a single industry, trade, craft, or occupation; or who are employees of one employer; or who are members of the same or an affiliated organization of employers or employees; whether such dispute is (1) between one or more employers or associations of employers and one or more employees or associations of employees; (2) between one or more employers or associations of employers; or (3) between one or more employees or associations of employees and one or more employees or associations of employees; or when the case involves any conflicting or competing interests in a 'labor dispute' (as hereinafter defined) of 'persons participating or interested' therein (as hereinafter defined).

"(b) A person or association shall be held to be a person participating or interested in a labor dispute if relief is sought against him or it and if he or it is engaged in the industry, trade, craft, or occupation in which such dispute occurs, or is a member, officer, or agent of any association of employers or employees engaged in such industry, trade, craft, or occupation.

"(c) The term 'labor dispute' includes any controversy concerning terms or conditions of employment, or concerning the association or representation of persons in negotiating, fixing, maintaining, changing, or seeking to arrange terms or conditions of employment, or concerning employment relations, or any other controversy arising out of the respective interests of employer and employee, regardless of whether or not the disputants stand in the proximate relation of employer and employee."

We quote these provisions from the two acts because there appears to have been no judicial interpretation in this state of Act No. 203 of 1934, and the federal courts have interpreted the federal statute several times.

The United States District Court for the Eastern District of Michigan passed upon a case involving the federal statute, in which the facts are much stronger than in this case, and refused the injunction prayed for. The style of the case is Cinderella Theater Company, Inc., et al. v. Sign Writers Local Union No. 591 et al. (D. C.) 6 F. Supp. 164. The syllabus fairly states the finding of the court in that case and is as follows:

"Constitutional law. Courts. Statute prohibiting issuance of injunctions by federal courts in labor disputes held not unconstitutional as invading province and usurping functions of federal courts (29 USCA §§ 101–115; Const. art. 3, §§ 1, 2).

"Courts. Federal courts inferior to Supreme Court have only jurisdiction conferred on them by Congress which may either destroy, wholly or in part, or limit such jurisdiction as it deems advisable (Const. art. 3, §§ 1, 2).

"Injunction. Controversy between labor union and theater owners growing out of owners' refusal to discharge nonunion sign writer held within statute prohibiting injunctions in 'labor disputes' (29 USCA §§ 101, 113 (a), 113 (b), 113 (c).

"Injunction. Where theater owners did not show any efforts to settle dispute growing out of refusal to discharge nonunion employee, court could not grant injunctive relief against use of stench bombs in theaters, mutilations of theater posters, and picketing, notwithstanding local authorities were shown

to be unable or unwilling to furnish adequate protection (29 USCA §§ 107 (e), 108 (5).

"Injunction. In absence of clear proof of actual participation in, authorization of, or ratification of, stench bombing of theaters and destruction of theater posters by defendant union or its officers, no injunctions could be issued against such acts (29 USCA § 106).

"Courts. Statute providing that no association or member thereof participating in labor disputes shall be held responsible in federal court for unlawful acts of individual officers, members, or agents except on clear proof of actual participation, ratification, or authorization of such acts, is valid exercise of power of Congress to prescribe evidence which shall be received, and effect of that evidence in federal courts (29 USCA § 106).

"Injunction. Patrolling in front of plaintiffs' theaters with 'unfair to organized labor' signs and distribution of 'unfair' cards held within statutory prohibition against injunctive process in labor disputes (29 USCA §§ 104, 106).

"Injunction. Contention that carrying of signs bearing words 'unfair to organized labor' and distribution of cards bearing similar words in front of plaintiffs' theaters were accompanied by fraud so as to authorize injunction because plaintiffs were not in fact unfair to organized labor could not be sustained (29 USCA § 104 (e, f).

"The contention could not be sustained, since such signs were only intended to mean that, as result of disagreement between plaintiffs and defendants, latter considered plaintiffs unfair, and that such unfairness was cause of labor disputes to which plaintiffs were giving publicity as authorized by 29 USCA § 104 (e, f)."

The court, in passing on what is a "labor dispute" in that case, said:

" * * * It is claimed that these acts were accompanied by fraud. This claim is based on the contention that the plaintiffs' theaters were not unfair to organized labor, and that therefore the advertising was false and fraudulent.

"It seems to me that the statements on these signs and cards to the effect that the plaintiffs or their theaters are 'unfair' to organized labor, fairly interpreted, should be construed as meaning, and intended to mean, only that as a result of a disagreement between plaintiffs and defendants the defendants considered the plaintiffs unfair and that such alleged unfairness was the cause and subject of a labor dispute between them and the plaintiffs, to which dispute they were thus giving publicity. I am convinced also that this would be the understanding created by that language in the minds of the public to whose attention it was brought. This act has to do with labor disputes. The very fact that it is a dispute indicates that there is disagreement and conflicting views. The federal courts are prohibited from interfering with a full and free advertising of those conflicting views. I am of the opinion that the court in construing this statutory provision cannot split hairs on the question whether or not the plaintiffs are 'fair' or 'unfair' toward 'organized labor.' It is generally recognized that signs usually are mere sketches. It is not possible to tell a long story with them. What one person might call being unfair to organized labor another person might well call entirely fair. The defendants, if they are entitled to carry banners and signs, will not be able to paint the whole story on such banners or signs. They will naturally, if not necessarily, use adjectives which one man will say are too strong and another will say are too weak. For example, is it being unfair to organized labor to employ nonunion labor? I cannot avoid the conclusion that the acts of the defendants in connection with this patrolling and these 'unfair' signs and cards do constitute the 'giving publicity to the existence of, or the facts involved in, any labor dispute,' and also the 'assembling peaceably to act or to organize to act in promotion of their interests in a labor dispute,' within the meaning of section 4 of the act (29 USCA § 104). The method used did not, in my opinion, involve 'fraud,' within the meaning of the statute."

We further quote from the syllabus in the case of Levering & Garrigues Company et al. v. Morrin et al., 71 F.(2d) 284, decided by the United States Circuit Court of Appeals, as follows:

"Courts. Where no fraud or violence was involved, decree restraining members of labor union, favoring closed shop, from attempting to induce owners, architects, or general contractors to let no subcontracts to members of employers' association, favoring open shop, by striking or by informing owners, architects, or general contractors that union members would not work on buildings if such subcontracts were let, held void as beyond jurisdiction of District Court (29 USCA §§ 101–115).

"Courts. Congress may, within limits fixed by Constitution, give either whole or restricted jurisdiction to District Courts and reg-

ulate exercise of such jurisdiction as it grants.

"Constitutional law. Power to grant injunction is not an inherent attribute of jurisdiction over a subject so as to render void a statute withholding power to grant injunction.

"Constitutional law. Litigant has no constitutional right to maintain an action in federal court where diversity of citizenship exists so as to render void a statute taking away power of District Court to grant injunction in labor cases not involving fraud or violence (29 USCA §§. 101–115).

"Courts. Statute restricting power of District Courts to grant injunctions in labor cases held applicable to case commenced before passage of such statute (29 USCA §§ 101–115)."

The court in this case held the statute had a retroactive effect for the reason it in effect was nothing more than a limitation affecting remedy, rather than property rights.

■■ We are convinced the interpretation given the Labor Injunction Act by the federal courts is applicable in reason to the proper interpretation of Act No. 203 of 1934 of Louisiana and, under the plain and unambiguous wording of that act, the courts of this state are now without jurisdiction to issue injunctions in labor disputes.

The dispute between plaintiffs and defendants in the case at bar is clearly a labor dispute, under Act No. 203 of 1934. It is admitted by counsel for plaintiffs in rule, and the record bears out the admission, that the patrolling and handing out of circulars by defendants was peaceable. There was no violence, no threats, no effort to intimidate or coerce any one, other than by handing to the passersby on the public street one of the circulars, and the placing of the tandem bicycle, with the sign on it, at or near the curb in front of plaintiffs' place of business. This was certainly no breach of the peace.

The words "without intimidation or coercion," as used in subsection (e) of section 3 of Act No. 203 of 1934, mean something different from that which was done by the members of defendants' organization, for the said section specifically states that an injunction will not issue for giving publicity to or communicating information regarding the existence of or the facts involved in any dispute, whether by advertising, speaking, patrolling any public street at any place where a person may lawfully be, or by any other method not involving fraud, violence, etc. To hold that the mere patrolling of the public street near plaintiffs' place of business and handing out the circulars, such as described above, and the placing of the tandem bicycle on or near the curb in front of plaintiffs' place of business were intimidation and coercion, would be to nullify the entire section and make meaningless the right granted therein, which could not have been the intention of the Legislature.

■ Act No. 203 of 1934 deals with a jurisdictional question. It limits the right to a remedy. It does not deprive any one of a constitutional right to have an injunction issue, for the reason that the right to an injunction is not a constitutional one, but a right granted by statute and subject to be enlarged or limited at the will of the Legislature. The act only effects a remedy and applies to all matters covered by it, whether pending in court or not at the time of its becoming a law. Legislation which only changes a remedy and not a substantive right has a retroactive effect, and we are convinced that Act No. 203 of 1934 is retroactive in effect and applies to the case at bar. Levering & Garrigues v. Morrin, cited supra.

■ With this premise to start from, we are not concerned with the correctness or incorrectness of the decision below at the time it was rendered. Under Act No. 203 of 1934, we are without jurisdiction to issue an injunction in the case at bar, and should we affirm the decision rendered below, we would be perpetuating an injunction which the law expressly declares cannot now be issued. The courts in this state would be and are powerless to enforce it, if it were perpetuated by an affirmance here.

We therefore conclude that the judgment of the lower court should be set aside and the injunction issued below dissolved.

Under the discretion allowed us by law in all cases, we are of the opinion that the costs of the lower court should be paid by defendant Hotel and Restaurant Employees and Beverage Dispensers, Local Union No. 183, and costs of appeal by plaintiffs in rule.

It is therefore ordered, adjudged, and decreed that the judgment of the lower court be set aside, and the injunction issued therein dissolved; defendants in rule to pay the costs of the lower court and plaintiffs in rule to pay the costs of appeal.