## LEVERING & GARRIGUES CO. et al. v. MORRIN et al.

### No. 393.

Circuit Court of Appeals, Second Circuit.
June 11, 1934.

Frank P. Walsh, of New York City (Frank P. Walsh and John Walsh, both of New York City, of counsel), for appellants.

Edward Maxson, of New York City (Merritt Lane, of Newark, N. J., of counsel), for appellees.

Before MANTON, AUGUSTUS N. HAND, and CHASE, Circuit Judges.

MANTON, Circuit Judge.

Appeal from a final decree. The decree, as entered, is alleged to be in violation of the labor law (29 USCA § 104 (a, c, g–i). The case was here before [61 F.(2d) 115], where we reversed the lower court, and that reversal was affirmed by the Supreme Court (289 U. S. 103, 53 S. Ct. 549, 77 L. Ed. 1062). We directed that the bill be dismissed, without prejudice, for lack of jurisdiction unless the appellees amended so as to correct the jurisdictional defect by striking from the bill a number of defendants. Below the court permitted the amendment and enjoined the present appellants.

These appellants, by the decree made October 14, 1933, amended January 8, 1934, are restrained and enjoined, with their agents or servants or those in active concert with them, "from inducing or attempting to induce owners, architects or general contractors to let no subcontracts to plaintiffs for the erection of structural iron and steel on buildings now being or to be erected in the Metropolitan District of New York, by sending to them circulars or other writing, stating, threatening, warning or intimating * * * that members of the unions associated with the International may or will refuse to work on buildings upon which plaintiffs have or may have sub-contracts, or by ordering, instigating, carrying on or supporting sympathetic strikes, on buildings upon which plaintiffs have or may have sub-contracts, or from otherwise attempting by coercive pressure, threats or intimidation, or such other unlawful means, to compel or influence owners, architects and general contractors not to patronize the plaintiffs."

After issue was joined, the matter was referred to a master, who found that, at the time of the occurrences involved, the building industry in the metropolitan district of New York was completely organized, excepting as to appellants and other members of the Iron League. Unions had been recognized and were operating under union conditions including a closed shop. The appellees and other members of the Iron League were operating on an open shop basis, the effect of this being that, in the construction of large buildings, members of unions operating closed shop and working on the same building at trades other than steel erection would have to work side by side with nonunion men who might be employed by members of the League. This gave rise to a controversy resulting in continuous strife between the Iron League and the International Union for a number of years. The League insisted on operating on an open shop plan, employing both union and nonunion men. The International's policy has been to cause the League to recognize the union and work under union conditions, including the closed shop. As a result, strikes and labor troubles occurred from time to time during the years, some of which were sympathetic strikes.

The master found that the controversy and dispute between the union and the appellees arose because of this difference of opinion and purposes; that the purpose of the appellants was to obtain a closed shop condition, and the purpose of the appellees to obtain an open shop condition in their employment of labor; that, by making public, notifying, advising, and urging owners, architects, and contractors engaged in the building business that members of the unions would cease and refuse to perform any work or to remain in any relation of employment with them if the subcontracts let for the erection of steel did not provide for the closed shop; that the appellants did give publicity to the existence of their complaint against the appellees by advertising, speaking, and patrolling and they did so advise and notify the contractors that, unless their requests were granted, they would advise, urge, and get the agreement of others to cease to perform any work or to remain in any relation of employment with them; that ap-

pellants, appellees, the owners, architects, and contractors, were all engaged in the same industry; that the dispute was not attended by fraud or violence; and that the defendants did not stand in direct relationship of employer and employee with the appellees.

The present appellants, Paul Morrin, William J. McGinn, Charles Massey, and Earl Calvert, are members of the International Association of Bridge, Structural and Ornamental Iron Workers and are now the sole defendants, for, after the reversal on the former appeal, permission was granted by the District Court to discontinue the suit as to the other named defendants.

In reversing the lower court, we stated that the District Court was to determine whether recent legislation (29 USCA §§ 101–115) had any application to further proceedings in this cause. The applicable provision of the statute is section 104, which reads:

"§ 104. *Enumeration of specific acts not subject to restraining orders or injunctions.* No court of the United States shall have jurisdiction to issue any restraining order or temporary or permanent injunction in any case involving or growing out of any labor dispute to prohibit any person or persons participating or interested in such dispute (as these terms are herein defined) from doing, whether singly or in concert, any of the following acts:

"(a) Ceasing or refusing to perform any work or to remain in any relation of employment; * * *

"(e) Giving publicity to the existence of, or the facts involved in, any labor dispute, whether by advertising, speaking, patrolling, or by any other method not involving fraud or violence; * * *

"(g) Advising or notifying any person of an intention to do any of the acts heretofore specified;

"(h) Agreeing with other persons to do or not to do any of the acts heretofore specified; and

"(i) Advising, urging, or otherwise causing or inducing without fraud or violence the acts heretofore specified, regardless of any such undertaking or promise as is described in section 103 of this chapter."

No court of the United States may grant a restraining order, temporary or permanent, in a labor dispute because of doing in concert the acts enumerated in section 104. Section 113 provides:

"§ 113. *Definitions of terms and words used in chapter.* When used in this chapter, and for the purposes of this chapter—

"(a) A case shall be held to involve or to grow out of a labor dispute when the case involves persons who are engaged in the same industry, trade, craft, or occupation; or have direct or indirect interests therein; or who are employees of the same employer; or who are members of the same or an affiliated organization of employers or employees; whether such dispute is (1) between one or more employers or associations of employers and one or more employees or associations of employees; (2) between one or more employers or associations of employers and one or more employers or associations of employers; or (3) between one or more employees or associations of employees and one or more employees or associations of employees; or when the case involves any conflicting or competing interests in a 'labor dispute' (as hereinafter defined) of 'persons participating or interested' therein (as hereinafter defined).

"(b) A person or association shall be held to be a person participating or interested in a labor dispute if relief is sought against him or it, and if he or it is engaged in the same industry, trade, craft, or occupation in which such dispute occurs, or has a direct or indirect interest therein, or is a member, officer, or agent of any association composed in whole or in part of employers or employees engaged in such industry, trade, craft, or occupation.

"(c) The term 'labor dispute' includes any controversy concerning terms or conditions of employment, or concerning the association or representation of persons in negotiating, fixing, maintaining, changing, or seeking to arrange terms or conditions of employment, regardless of whether or not the disputants stand in the proximate relation of employer and employee.

"(d) The term 'court of the United States' means any court of the United States whose jurisdiction has been or may be conferred or defined or limited by Act of Congress, including the courts of the District of Columbia."

■ We think that the relief granted in the decree appealed from is in violation of the above statute. The cause grows out of a labor dispute, as defined in section 113 (c), and is a controversy between members of an association of employers and members of an association of employees engaged in the same industry (section 113 (a, c). The appellees

were seeking to arrange terms or conditions of employment.

Now, under the statute, a District Court cannot restrain the notifying of parties by interested individuals (section 104 (g) of an intention to refuse to work; nor can the court prevent, in the absence of fraud or violence, the giving of publicity to the facts in the controversy (section 104 (e) or encouraging others to refuse to work (section 104 (i). The fact that the notification and the publicity will result in coercing the parties informed and cause them to refrain from contracting with the appellees cannot be taken into consideration, for the court is without the power to prevent such notification. The court has not the power or authority to issue an injunction against these appellants who are engaged in a controversy arising out of an attempt to establish a closed shop by notifying general contractors and architects of an intention of members of a union to refuse to work, nor can these appellees prevent these appellants from refusing to work or inciting sympathetic strikes.

It is argued, however, that the deprivation of the District Court of its power to issue an injunction in a case which does not involve interstate commerce and where the jurisdiction of the court is based upon diversity of citizenship is tantamount to a grant of jurisdiction with a concurrent withholding of the power to properly administer the causes over which the jurisdiction has been granted, and therefore the statute is unconstitutional within the rule announced in Michaelson v. United States, 266 U. S. 42, 45 S. Ct. 18, 69 L. Ed. 162, 35 A. L. R. 451. However, Congress has the power, as now exercised, of withdrawing this jurisdiction from the District Court. Congress may give either whole or restricted jurisdiction at its discretion, provided there is no extension beyond the boundaries fixed by the Constitution (Kline v. Burke Construction Co., 260 U. S. 226, 43 S. Ct. 79, 67 L. Ed. 226, 24 A. L. R. 1077), and Congress has the power to regulate the power which it grants (Ex parte Robinson, 19 Wall. 505, 22 L. Ed. 205; Michaelson v. United States, supra).

It has been said that the attributes which inhere on a grant of power over a subject and which are inseparable from it, cannot be rendered practically inoperative. But the power to issue an injunction is not necessarily within the class of inherent attributes. Smith v. Apple, 264 U. S. 274, 44 S. Ct. 311, 68 L. Ed. 678. Congress has not exceeded its powers in this legislation.

We think it unnecessary to consider here whether this statute denying injunctive relief differs from statutes regarded as valid although they curtailed remedies. In Duplex Printing Press v. Deering, 254 U. S. 443, 41 S. Ct. 172, 65 L. Ed. 349, 16 A. L. R. 196, the statute limited the power to grant injunctions where the relationship of employer and employee existed. The constitutionality of the enactment was raised but not discussed. The court, however, recognized the limitation, by acknowledging that the statute imposed restrictions upon the powers of the federal equity court, and in fact stated that the restriction was in the nature of a special privilege or immunity to a particular class. But the sole effect of the restriction was the subjection of the statute to a strict construction. In Truax v. Corrigan, 257 U. S. 312, 42 S. Ct. 124, 128, 66 L. Ed. 254, 27 A. L. R. 375, upon which the appellees rely, the Supreme Court held unconstitutional a state statute which prohibited the issuance of injunctions in all cases, but those in which the acts complained of were accompanied by violence. But the Truax Case involved the power of a state Legislature and is to be further distinguished on the basis of the different effects of the respective statutes upon property rights. The Supreme Court stated: "The opinion of the State Supreme Court [20 Ariz. 7, 176 P. 570] in this case, if taken alone, seems to show that the statute grants complete immunity from any civil or criminal action to the defendants, for it pronounces their acts lawful."

In the instant case, the statute considered grants no such complete immunity. Therefore a case is not presented calling for the invocation of the due process clause, since the present statute is in effect nothing more than a limitation affecting remedy rather than property rights. The right of a litigant, as stated in Kline v. Burke Construction Co., supra, at page 233 of 260 U. S., 43 S. Ct. 79, 82, "to maintain an action in a federal court on the ground that there is a controversy between citizens of different states is not one derived from the Constitution of the United States, unless in a very indirect sense. * * * The Constitution simply gives to the inferior courts the capacity to take jurisdiction in the enumerated cases, but it requires an act of Congress to confer it. * * * A right which thus comes into existence only by virtue of an act of Congress, and which may be withdrawn by an act of Congress after its exercise has begun, cannot well be described as a constitutional right."

Since Congress may curtail this remedy or withdraw the jurisdiction of the District Court, no constitutional rights based upon the withdrawal of remedial rights can be successfully raised, since the litigant never had an absolute constitutional right to have a federal court take jurisdiction. While we held on the former appeal that there was no jurisdiction, we did permit the District Court leave to allow appellees to amend the complaint. Although the complaint was amended, a new decree could not be entered, for the court had not the power to grant the injunction. The statute was applicable and binding on the lower court at the time of the entry of the decree. Duplex Printing Press Co. v. Deering, supra.

Decree reversed.