UNION PREMIER FOOD STORES, Inc., et al. v. RETAIL FOOD CLERKS AND MANAGERS UNION, LOCAL NO. 1357, et al.

No. 6817.

Circuit Court of Appeals, Third Circuit.

Aug. 2, 1938.

Edward Davis and Louis McCabe, both of Philadelphia, Pa., for appellants.

Harry Shapiro, of Philadelphia, Pa., for appellees.

Robert B. Watts, of Washington, D. C., for National Labor Relation Board.

Before BUFFINGTON, DAVIS, and BIGGS, Circuit Judges.

DAVIS, Circuit Judge.

This case is here on petition for the allowance of a supersedeas from a decree granting an ad interim restraining order by the District Court on June 8, 1938.

The question upon which the decision in this case depends is whether or not there was a "labor dispute" to which the plaintiffs were a party.

This is a suit in equity brought under section 1 of the Act of July 2, 1890 (15 U.S.C.A. § 1) and section 16 of the Act of October 15, 1914 (15 U.S.C.A. § 26) respectively called the Sherman Anti-Trust Act and the Clayton Act. Plaintiffs say that jurisdiction is also conferred upon this court by the Acts of March 23, 1932 (29 U.S.C.A. §§ 101 and 107) and July 5, 1935 (29 U.S.C.A. § 151 et seq.), known as the Norris-LaGuardia Act and the Wagner Act.

The amount involved in these proceedings exceeds $3,000 exclusive of interest and costs. The capital invested in plaintiffs' business exceeds $2,000,000 and the amount of business done annually approximates $20,000,000.

Three corporations constitute the plaintiffs in the case. The Union Premier Food Stores, Inc., is a corporation organized and existing under the laws of Pennsylvania and the other two corporations, the Food Fair, Inc., of Pennsylvania, and The Food Fair, Inc., of New Jersey, are wholly owned subsidiaries of the Premier Company. All three corporations have their principal place of business at 58th Street and Grays Avenue, in the City of Philadelphia. These corporations are separate and distinct, but are component and interdependent units of a single enterprise engaged in the business of owning and operating retail food stores of the type known as "super markets" in Pennsylvania, New Jersey and Maryland.

There are four union defendants, all affiliated with the American Federation of Labor, and a number of individual defendants who are members and officers of the union defendants.

The plaintiffs are now and for many years have been engaged in buying, selling and shipping merchandise in interstate commerce. They operate two warehouses, one located in Philadelphia and the other in Baltimore, and twenty-seven stores, located in New Jersey, Pennsylvania and Maryland. Approximately ninety per cent. of the merchandise used or handled by the plaintiffs' warehouses comes from points outside of Pennsylvania and Maryland, and about sixty per cent. of this merchandise is in turn shipped to stores outside the states in which the warehouses are located. They have working for them fifteen hundred or more employees who have no union of their own and are not members of any union. None of the employees are permanently at-

tached to any particular store or corporation. They are or may be shifted from store to store or from corporation to corporation. So there is no question about the interstate character of the business; nor of the requisite sum involved.

For quite a while during the early part of this year the defendant unions tried to induce the plaintiffs' employees to join their unions, but they, of their own accord and without any influence or interference whatever on the part of the plaintiffs, refused to join. However, the defendants notified plaintiffs that they represented a majority of their employees.

Upon the refusal of plaintiffs' employees to join defendant unions, defendants placed professional, hired pickets (none of whom had in any way been connected with the plaintiffs) around their stores and warehouses, carrying signs which falsely stated that plaintiffs were unfair to organized labor and that their employees were on strike. The pickets, by surrounding plaintiffs' stores and warehouses, prevented customers from entering them, prevented trucks from loading and unloading, from taking merchandise to and from their stores and warehouses and from receiving merchandise for plaintiffs or from delivering merchandise to them.

The United Retail and Wholesale Employees of America, hereinafter called United, affiliated with the Committee for Industrial Organization (hereinafter referred to as the ·C. I. O.), observed what was going on and notified plaintiffs that it represented more than a majority of their employees and that under the provisions of the Wagner Act, it was entitled to represent their employees as their sole bargaining agent and that any agreement which they entered into with any other union would be illegal, void and punishable under the provisions of that Act. The situation was that both the affiliates of the American Federation of Labor on the one side and United, affiliated with the C. I. O., on the other side, claimed the right to represent plaintiffs' employees as their sole, collective bargaining agent. Thereupon plaintiffs suggested to both the defendants and United that they try to organize and unionize their employees in any way that they could; that both sides would have entire freedom to distribute literature to them, talk to and persuade them; that at the end of a campaign period of four days in which to organize and unionize them, an election be held to select their bargaining agents and plaintiffs would sign a contract with whichever union obtained a majority of the votes at the election. United agreed, but the defendants, although claiming to represent a majority of the employees, refused and declared that they would not withdraw their picket line unless and until plaintiffs entered into a "union agreement" with them. Plaintiffs thereupon, in order to stop the picketing, which was destroying their business, agreed to enter into to a contract with the defendants and began negotiations accordingly. The pickets were thereupon withdrawn.

United vigorously protested against the proposed agreement with the defendants and filed a complaint on April 8, 1938, against plaintiffs with the National Labor Relations Board, hereinafter called the Board, charging them with unfair labor practices as defined in subsections (1) (2) (3) and (5) of section 8 of the Wagner Act, 29 U.S.C.A. § 158(1–3, 5).

The Board notified the plaintiffs of these charges and asked if they cared to make a statement of their "side of the matter".

A preliminary hearing was held on April 19, 1938, at the office of the Board, 1432 Bankers Securities Building, Philadelphia, Pennsylvania. At that hearing Leo Fee, Esq., a hearer for the Board, suggested that the defendant unions, United and the plaintiffs agree that an election be held to determine which of the unions was entitled to represent plaintiffs' employees for the purpose of collective bargaining which was really the only question at issue. This suggestion was accepted by the plaintiffs and United but was rejected by the defendant unions. Both sides, the defendant unions and United, claiming as members a majority of plaintiffs' employees, asserted the right to be their sole collective bargaining representative. This question had to be determined by the Board and could not be determined, under the facts in this case, by the plaintiffs. They said then, as they have declared over and over again ever since, that they were willing to enter into a "union agreement" in accordance with the provisions of the Act with either union, whichever was entitled to represent their employees; that all they wanted to know was with which union or unions they could legally enter into a contract as legal rep-

resentative for the purpose of collective bargaining in accordance with the provisions of the Act.

The plaintiffs then, May 12, 1938, received the following communication from the Board:

"National Labor Relations Board
"Fourth Region
"1432 Bankers Securities Building
"Philadelphia, Pa.
"May 12, 1938
"Kingsley 1860
"Union Premier Food Stores, Inc.,
"58th Street and Grays Avenue,
"Philadelphia, Pa.
"In re: United Premier Food Stores, Inc.,
The Food Fair, Inc., a New Jersey Corp.,
The Food Fair, Inc. of Pa., a Pa. Corp.
Case No. IV–R–209.
"Gentlemen:

"This is to advise you that the United Retail & Wholesale Employees of America, a labor organization, has filed in this office an amended Petition for investigation and certification of representatives pursuant to Section 9(c) of the National Labor Relations Act, claiming to have been chosen by a majority of your regular employees for the purposes of collective bargaining, exclusive of executives, administrative officers, part-time or extra employees and office workers.

"They have further supplied this office with signed membership cards which indicate that their claim is founded in fact. Petition further states that you have refused to recognize the United Retail & Wholesale Employees of America as the sole and exclusive bargaining agency and that thereby a question has arisen concerning the representation of your employees.

"You are further advised that a copy of this Petition is being forwarded to the National Labor Relations Board in Washington, together with a description of the situation that presently exists, for such disposition as the Board proposes to make of the matter.

"Very truly yours,
"(signed) John E. Johnson
"John E. Johnson,
"FMB.  Acting Regional Director."

Plaintiffs were advised by their counsel that this communication was in effect a restraining order and prevented them from entering into an agreement with defendants pending the determination by the Board of the collective bargaining representative for their employees.

Defendants thereupon notified the plaintiffs that in preparation for the election to be held by the Board they would organize and unionize plaintiffs' employees and try to enroll them in the defendants' unions and requested plaintiffs' cooperation. Plaintiffs agreed to cooperate with defendants to the extent that they legally could, and would not only permit, but would aid defendants in distributing literature and notices of meetings, and would allow defendants' organizers to meet, talk to and persuade their employees to enroll as members of defendants' unions.

Plaintiffs allege that defendants continued their efforts to organize, unionize and enroll their employees in their union until June 1, 1938, when it is reported that they had succeeded in persuading only a small per cent. of them to join their unions and what that per cent. is the Board will determine.

On the following day, June 2, 1938, plaintiffs allege that defendants again hired and placed professional pickets, none of whom were or had been employed by plaintiffs, in front of and around plaintiffs' stores and warehouses. They again, as before, crowded around and blocked the entrances to plaintiffs' stores; they coerced and intimidated customers and suppliers from dealing with plaintiffs; and prevented the delivery or shipment of merchandise to or from plaintiffs' stores and warehouses and carried around with them large, conspicuous signs falsely accusing plaintiffs with being unfair to organized labor and stating that their employees were on strike.

More than fifty per cent. of the merchandise handled by plaintiffs is perishable. The continuance of the picket line would have destroyed plaintiffs' business within a few days for they could not, while the picket line was maintained, move even perishable merchandise to or from the railroad stations or their warehouses. Plaintiffs tried hard to settle the contest between the defendant unions and United, but without success. They saw no way to escape the destruction of their business and financial ruin except through injunctive relief. Accordingly they filed in the District Court a bill in which they prayed that defendants be enjoined and restrained until final hearing and perpetually thereafter from, (1)

violating the Sherman Anti-Trust Act, the Clayton Act and the Wagner Act, (2) from interfering with, obstructing or stopping, directly or indirectly, the shipment of plaintiffs' interstate merchandise to or from their stores and warehouses, (3) from conspiring and "bombing" to obstruct or stop, directly or indirectly, plaintiffs' interstate commerce business, (4) from destroying, interfering with, or in any way obstructing or picketing their offices, stores and warehouses and from obstructing or interfering with plaintiffs in their purchase, sales, receipt and delivery of merchandise, (5) from interfering with plaintiffs' employees and from visiting the homes of plaintiffs' employees and threatening, intimidating, coercing or insulting their families for the purpose of forcing them to join the defendant unions, and (6) from displaying or carrying picket cards falsely stating that plaintiffs' employees are on strike or that plaintiffs are unfair to organized labor.

The learned District Judge granted a preliminary injunction restraining defendants in accordance with plaintiffs' prayers.

The fundamental question here, as stated above, is whether or not under the facts of this case there was a labor dispute involving the plaintiffs within the meaning of the Wagner Act. Of course there was a "labor dispute" or the Board could not have taken jurisdiction and proceeded to determine the question in issue, but the dispute was and is entirely between the unions. The plaintiffs are not disputing with anyone.

It is true that United filed a complaint with the Board against the plaintiffs charging them with being guilty of practically everything which section 8 of the Act, 29 U.S.C.A. § 158, defines as an unfair labor practice, but all the facts and evidence, which complainant must have known, show that there was only one issue over which there was any question or controversy whatever and that was, who was to be the representative of plaintiffs' employees for the purposes of collective bargaining in respect to rates of pay, wages, hours of employment, or other conditions of employment and this issue in the last analysis was one between the C. I. O. and the American Federation of Labor.

Section 2(9) of the Wagner Act, 29 U. S.C.A. § 152(9), defines a "labor dispute" as follows: "The term 'labor dispute' includes any controversy concerning terms, tenure or conditions of employment, or concerning the association or representation of persons in negotiating, fixing, maintaining, changing, or seeking to arrange terms or conditions of employment, regardless of whether the disputants stand in the proximate relation of employer and employee."

The only controversy in this case concerns the right to represent plaintiffs' employees as collective bargaining agent and that is a real controversy, but it is between the affiliates of the C. I. O. and of the American Federation of Labor. This controversy in money means a gain of about $50,000 in dues to the one which wins, but the plaintiffs are not concerned as to which one that may be. The plaintiffs are standing by while the disputants wage their contest, and are ready, willing and anxious to obey the Board, bargain collectively with the victor and comply with the provisions of the Act when the Board certifies to them the collective bargaining agent.

However sympathetic we may be—on the one hand with labor, to see that its interests are legally and fully protected in respect to proper representation and collective bargaining, or in any other respect affecting its employment; and on the other hand, with capital, to see that it receives a square deal in an honest, fair and impartial administration of the Wagner Act—yet we can not construe the facts of this case to constitute a "labor dispute" involving the plaintiffs when there is no such dispute.

The unions are the "disputants" and as to this dispute they do not now stand in "proximate" or other relation to the plaintiffs or their employees within the meaning of the Wagner Act. Congress meant to help both capital and labor by the passage of this Act and when the Board has taken jurisdiction and is determining the only question in dispute between the unions, it did not intend to destroy the great business of any employer who stands willing and ready to obey any and all provisions of the Act as soon as told by the Board what to do.

In the case of Edward Lauf et al. v. E. G. Shinner & Co., Inc., 303 U.S. 323, 58 S.Ct. 578, 82 L.Ed. 872, upon which defendants principally rely, there were no contesting unions. The dispute was entirely between the union and the employer. The union demanded that the employer require its employees to join the union under penalty of discharge for refusal to do so. This the employer would not do and thus a controversy arose between the employer

and the union over the contention of the union that the employer must force its employees into the union. In the case at bar the Board has taken that question away from the consideration of the plaintiffs and the unions. They may not dispute about it. The defendants say that we represent your employees. The plaintiffs reply, that may be true, but the fact will be found by the Board.

There was not a single unfair labor practice or question in dispute in this case with the plaintiffs. Their refusal to bargain collectively with United or plaintiffs under the facts in this case was not a refusal to bargain collectively with representatives of their employees. It is true that United claims to be their representative but so do the defendants and it is to be hoped that the Board will soon determine which is the legal representative, and when that is done and the Board certifies the rightful claimant, the plaintiffs will immediately enter into a union agreement with it. No state court decision in this case, as there was in the Lauf Case, has construed the facts to be a "labor dispute". The Pennsylvania Labor Relations Act, 43 P.S.Pa. § 206c, defines a "labor dispute" in the same language as does the Wagner Act, but the Supreme Court of Pennsylvania has not yet defined what constitutes a "labor dispute" under that Act. This case substantially differs from the Lauf Case, and the decision in that case is not controlling here.

■ Since there was no "labor dispute" in this case in which plaintiffs were involved, the District Court was not bound by the provisions of the Norris-LaGuardia Act, 29 U.S.C.A. § 101 et seq., but had power to grant the restraining order and we think it wisely exercised that power.

· Section 10(h) of the Wagner Act, 29 U.S.C.A. § 160(h), provides that: "When granting appropriate temporary relief or a restraining order, or making and entering a decree enforcing, modifying, and enforcing as so modified or setting aside in whole or in part an order of the Board, as provided in this section, the jurisdiction of courts sitting in equity shall not be limited by sections 101 to 115 of this title."

■ Section 10(e) of the Act, 29 U.S.C.A. § 160(e), conferred power upon courts sitting in equity to grant appropriate temporary relief and a restraining order upon the application of the Board to enforce its or-

der. In section 10(f), 29 U.S.C.A. § 160 (f), power was given to courts to grant like relief to persons aggrieved by the final orders of the Board. As we read the Act section 10(h) confines the exercise of this power to sections 10(e) and 10(f). It follows that courts sitting in equity do not have power to grant appropriate temporary relief or a restraining order in cases involving a "labor dispute" until the Board has filed its order. The District Court reached the right conclusion in this case, but based its order upon the wrong ground.

■ In such a case as we have here, where the controlling and only question is which of two labor unions is the collective bargaining agent of the employees of the plaintiffs, and the employers take no part in such dispute, but, on the contrary, are willing to abide by the decision of the Board and contract with the union it designates, it is manifest that the Board, and it alone, has jurisdiction to decide that question by an election and, as conceded at the argument, the court below had no power to order an election and to that extent its order is vacated; but on the question before us, whether or not we should grant a supersedeas of the injunctive order of the court, pending a decision by the Board as to what organization is the lawful bargaining agent of the plaintiffs' employees with which the plaintiffs must bargain, we think the supersedeas should be denied and the status in quo preserved until the Board acts. Such denial will prevent irreparable injury to the plaintiffs and the ruin of its business and at the same time do little, if any, harm to defendants.

The petition for a supersedeas is denied pending action by the Board.

BIGGS, Circuit Judge (dissenting).

I wish to recapitulate briefly certain allegations of the bill of complaint as follows.

It is alleged that two of the appellees are incorporated under the laws of Pennsylvania and one is incorporated under the laws of New Jersey. These three corporations own and operate as a joint enterprise twenty-seven food stores in Pennsylvania, New Jersey and Maryland, and two warehouses, situated respectively in Baltimore and Philadelphia. Food supplies purchased by the appellees are shipped in interstate commerce to these warehouses and a large proportion of the supplies so received by the two warehouses are shipped out again

through channels of interstate commerce to the stores.

The appellants, unincorporated unions, local to Philadelphia but affiliated with the American Federation of Labor, and their officers and members, caused the picketing of the stores and warehouses referred to. Such picketing served to prevent the appellees' customers and delivery agents from entering the stores and warehouses. The appellants informed the appellees that the pickets would be withdrawn if the appellees would sign an agreement naming the appellant unions as the exclusive bargaining agents for the appellees' employees.

About this time another union, styled "United Retail and Wholesale Employees of America", affiliated with the Committee for Industrial Organization, informed the appellees that it represented more than a majority of the appellees' employees and that it desired to act as the exclusive bargaining agent on behalf of such employees. The appellees allege that they were and are entirely willing to recognize as bargaining agent whatever union may be designated for that purpose by a majority of their employees. They state that they proposed that an election should be held among their employees to decide this question and that the United Retail and Wholesale Employees of America agreed that this course should be followed but that the appellants refused to accede to it.

The bill also alleges that the appellees, yielding to "illegal coercion and force" exerted against them by the appellants, on April 2, 1938 signed an agreement to negotiate an agreement with the appellant unions. The pickets were then withdrawn. The United Retail and Wholesale Employees of America thereupon filed a complaint against the appellees with the National Labor Relations Board alleging unfair labor practices by the appellees in violation of Section 8 of the National Labor Relations Act, 29 U.S.C.A. § 158. The Labor Board informed the appellees of the charges made in this complaint and requested an informal hearing with the hope that the controversy might be brought to an end.

An informal hearing was held but no agreement was reached. The appellees then received another notice from the Board which is set out in full in the majority opinion. The appellees' counsel construed this notice to be in the nature of a restraining order, prohibiting the appellees from entering into any agreement pending the certification by the Board of a bargaining agent for the appellees' employees.

The appellants informed the appellees, pending the holding of an election by the Board, that they would endeavor to organize and unionize the appellees' employees and requested the appellees' cooperation to such end. The appellees replied that they would not intimidate, coerce or dominate their employees in the selection of a union as their bargaining agent, but that they would cooperate with the appellants to the extent permitted by law.

It further appears from the bill of complaint that following this request, and in the period from May 12 to June 1, 1938, the appellants succeeded in enrolling less than 1% of the appellees' employees. The bill alleges that the appellants thereupon threatened the appellees that if they would not sign an immediate agreement constituting the appellant unions bargaining agents for the appellees' employees, picketing would be resumed. The appellees refused to sign such an agreement and picketing was recommenced.

The bill of complaint also alleges that the appellants unlawfully "conspired and combined together to force, intimidate and coerce" the appellees into the signing of such an agreement, placed professional pickets around the stores and warehouses of the appellees, that these pickets coerced and intimidated customers and prevented supply agents from dealing with the appellees and carried false and misleading signs to the effect that the appellees were unfair to organized labor. The bill of complaint also alleges that the appellants contemplate the commission of other unlawful acts, including destruction of the appellees' property and bodily harm to the appellees' officers and employees.

The bill of complaint further alleges that the acts committed by the appellants and their agents constitute a burden and obstruction to interstate commerce, and that jurisdiction of the controversy at bar is conferred upon the District Court by virtue of the Sherman and Clayton Acts in conjunction with the Norris-LaGuardia Act and the National Labor Relations Act. The bill concludes with prayers that preliminary and perpetual injunctions issue to restrain the appellants from the commission of the acts complained of.

Upon motion for a preliminary injunction a hearing was had before the District Court. After two of the appellees' witnesses had been heard the appellants filed a motion to dismiss the bill. After consideration an opinion was filed by the learned District Judge in which he held that the District Court had jurisdiction of the controversy because the appellees were engaged in interstate commerce. He also held that provisions of the National Labor Relations Act, hereafter specifically referred to, served to relieve the limitations placed upon the jurisdiction of the Courts of the United States to issue injunctions in labor disputes imposed by the Norris-LaGuardia Act.

After hearing further testimony, the District Judge filed another opinion in which the question of jurisdiction was again discussed. He then entered an order restraining the appellants in accordance with the prayers of the bill of complaint, and appointed a master to hold an election among the appellees' employees.

It should be noted here that the National Labor Relations Board is engaged in holding an election to determine the representation of the appellees' employees for the purposes of collective bargaining.

An appeal was taken from the decree of the District Court and an application was made to us for supersedeas of the decree referred to and for a writ staying all further proceedings in the court below pending the disposition of the appeal.

I concur in the holding of the majority opinion of this Court that the District Judge did not possess the power to appoint a master who in effect was to hold an election to determine the representation of the appellees' employees for the purposes of collective bargaining. When the National Labor Relations Board has taken jurisdiction of a labor dispute, its power to hold an election for the stated purpose must be deemed to be exclusive and may not be limited or circumscribed by decrees of court. I can find no decided case upon this point, but I think a sufficiently close analogy is supplied by those cases in which courts have refused to enjoin the holding of elections and other proceedings of the National Labor Relations Board. Heller Bros. Co. v. Lind, 66 App.D.C. 306, 86 F.2d 862, certiorari denied, 300 U.S. 672, 57 S.Ct. 611, 81 L.Ed. 878; Pratt v. Oberman & Co., 8 Cir., 89 F.2d 786; Newport News Ship-building & Drydock Co. v. Schauffler, 4 Cir., 91 F.2d 730, affirmed, 303 U.S. 54, 58 S.Ct. 466, 82 L.Ed. 646; Myers v. Bethlehem Corporation, 303 U.S. 41, 58 S.Ct. 459, 82 L.Ed. 638.

Jurisdiction in the case at bar does not rest upon diversity of citizenship, but is alleged to rest upon the Federal Acts heretofore referred to. I deem it unnecessary at this stage of the controversy to treat with the question of whether the appellees are engaged in interstate commerce as defined by the Sherman and Clayton Acts. I think it is obvious that the food supplies of the appellees are part of the current of commerce between the States and that a diminution of the appellees' trade affects the flow of commerce within the meaning of the National Labor Relations Act. National Labor Relations Board v. Jones & Laughlin Steel Corporation, 301 U.S. 1, 31, 32, 57 S.Ct. 615, 621, 81 L.Ed. 893, 108 A.L.R. 1352. But these questions are not raised directly by the parties and the questions here at issue may be disposed of by an examination of the provisions of the Norris-LaGuardia Act.

The major question presented for our consideration is summed up in the first opinion of the learned District Judge as follows: "The Wagner Act withholds from the Board the power to enforce its judgments but loans to it the ample power of enforcement of the Courts. To enable the Courts to function the provisions of the Norris Act are expressly withheld from cases of which the Labor Board has taken jurisdiction. It is true that its verbal terms apply only to decisions rendered but it is implicit in any Act of this character for the enforcement of the judgments of any tribunal, that the law which stands behind the tribunal in enforcing its judgments will and must stand behind it in reaching those judgments. This means that nothing in the Norris Act can be construed to prevent a Court from exercising its equity powers to prevent interference with the Labor Board in exercising its functions. No friend of Labor, or at least organized Labor, could think otherwise." He states in his second opinion, "The (National Labor Relations) Act provides for its enforcement in effect loaning the judicial powers of the Courts. The question then arose whether the Norris Act would not interfere with the enforcement of the Wagner Act. This anticipated difficulty was solved by the provi-

sion in the Wagner Act, expressly directing that in cases subject to the jurisdiction of the Labor Board, the Norris Act should have no application. It is true that the literal verbiage of the Act extends only to the enforcement of the orders of the Board. The Wagner Act had a very obvious motive and purpose. That was to provide a tribunal for the determination of all labor dispute controversies so as to avoid the necessity, and even the excuse, for a resort to force. The evident intent of Congress in consequence was that the Labor Board should have the exclusive jurisdiction in all such disputes * * * ."

The learned District Judge held in effect that under the circumstances of the case at bar there was a labor dispute and that the Board had taken jurisdiction of that dispute. Section 10 of the National Labor Relations Act, July 5, 1935, c. 372, Sec. 10, 49 Stat. 453 (29 U.S.C.A. § 160), provides for the prevention of unfair labor practices. Subsection (e) thereof provides for petitions to the Circuit Courts of Appeals for the enforcement of the orders of the Board. This is the "loan" of the power of enforcement referred to in the opinion of the court below. Subsection (h) of Section 10 provides that when the Circuit Courts of Appeals are " * * * granting appropriate temporary relief or a restraining order, or making and entering a decree enforcing, modifying, and enforcing as so modified or setting aside in whole or in part an order of the Board, as provided in this section, the jurisdiction of courts sitting in equity shall not be limited * * * " by the provisions of the Norris-LaGuardia Act, March 23, 1932, c. 90, Secs. 1–15, 47 Stat. 70–73 (29 U.S.C.A. §§ 101–115).

Now by the terms of subsection (h) it is apparent that the relief there provided from the limitation of jurisdiction imposed by the Norris-LaGuardia Act for the issuance of injunctions in labor disputes is applicable only to Circuit Courts of Appeals and then only when they are engaged in enforcing, modifying or setting aside the orders of the Board. I concur in the conclusion of the majority to such effect.

But here occurs what I deem to be the anomaly expressed in the majority opinion. Such orders of the Board as the Circuit Courts of Appeals are called upon to enforce may be made lawfully by the Board only when jurisdiction is conferred upon it by the existence of a labor dispute or

of unfair labor practices tending to impose or imposing a burden upon commerce between the States as defined by the National Labor Relations Act. If there is no labor dispute within the definition of subsection (9) of Section 2 of the Act, 29 U.S.C. A. § 152(9), as the majority opinion holds, under the circumstances of the case at bar and upon the record before us, the Board would have no power to hold that election to determine employee representation to which the majority opinion looks and the destructive conflict between warring unions must continue uncontrolled by the very agency, the Labor Board, designed by Congress to aid in putting an end to industrial strife.

I think it is very clear, however, that the controversy between the unions is a labor dispute within the meaning of the National Labor Relations Act.

Subsection (9) of Section 2 of the Act 29 U.S.C.A. § 152(9), defines the term "labor dispute" as including . " * * * any controversy concerning terms, tenure or conditions of employment, or concerning the association or representation of persons in negotiating, fixing, maintaining, changing, or seeking to arrange terms or conditions of employment, regardless of whether the disputants stand in the proximate relation of employer and employee." In the case at bar the disputants, the rival unions, are engaged in a controversy as to which of them shall represent the appellees' employees in negotiation with the appellees as to terms and conditions of employment. The disputants do not stand in the proximate relation of employer and employee. Their relation to the employer is that of persons who seek to negotiate with him. That is their connection with the situation and that is why there is a labor dispute. The phrase regarding proximate relationship used in the Act and quoted above is not one of inclusion as the majority opinion holds, but one of exclusion. It simply makes plain that the dispute need not be between employer and employees. In my opinion the controversy in the case at bar is precisely within the definition of a labor dispute as defined by the National Labor Relations Act.

An examination of the case of Lauf v. E. G. Shinner & Co., 303 U.S. 323, 58 S.Ct. 578, 82 L.Ed. 872, I think serves to confirm this conclusion. Section 13(c) of the Norris-LaGuardia Act, 47 Stat. 73, 29 U.S.C. A. § 113(c), under discussion in the cited

case, is substantially similar[1] in terms with subsection (9) of Section 2 of the National Labor Relations Act. In the Lauf Case the jurisdiction of the District Court was bottomed upon the diversity of citizenship of the parties. The respondent, Shinner & Co., maintained meat markets in Milwaukee, Wisconsin. The petitioners were an unincorporated labor union and its business manager. None of the respondent's employees was a member of the petitioning union. The petitioners demanded of the respondent that it require its employees, under penalty of discharge, to join the union. The respondent informed its employees that they were free to do this if they wished, but the latter refused to join. The union did not represent the employees in any capacity, they having their own organization. The petitioners caused false and misleading signs to be placed before the respondent's markets, hired persons not the respondent's employees to picket the markets, and falsely accused the respondent of being unfair to its employees and to organized labor. By molestation, threats and intimidation the petitioners prevented the respondent's customers from patronizing the markets, causing the respondent company to suffer irreparable damage. Upon this state of facts the District Court held that there was no labor dispute and enjoined the petitioners from continuance of the acts complained of. The Circuit Court of Appeals affirmed this decree. The Supreme Court reversed the court below, holding that there was a labor dispute within the definition of the Norris-LaGuardia Act.

It will be observed that in the facts of the cited case and those of the case at bar there exist but few pertinent distinctions in so far as the question now under discussion is concerned. True, in the Lauf Case the Wisconsin Labor Act had been construed wrongly by the courts below in view of the decision of the Supreme Court of Wisconsin in Senn v. Tile Layers Protective Union, 222 Wis. 383, 268 N.W. 270, 872, 873, and of the decision of the Supreme Court of the United States in Senn v. Tile Layers Protective Union, 301 U.S. 468, 57 S.Ct. 857, 81 L.Ed. 1229. The de-

cision in the Lauf Case corrected this error as the majority opinion of this Court points out, but the Supreme Court of the United States also had before it the question of injunction by a Court of the United States in a labor dispute in view of the Norris-LaGuardia Act and its adjudication went to this issue as well. It is also the case as pointed out in the majority opinion that in the Lauf Case there were no contesting unions. There was but one union seeking to compel the employees of Shinner & Co. to join its rolls. In the case at bar, there are a number of unions seeking to compel the appellees' employees to join their respective organizations. In the cited case, there were no unfair labor practices upon the part of the employer, the union in fact not representing the employees of Shinner & Co. in any capacity. In the case at bar, as stated in the majority opinion, no unfair labor practice appears upon the part of the appellees unless it consists in their refusal to treat with United Retail and Wholesale Employees of America as an exclusive bargaining agent, a union which the Board has not certified as the bargaining agent for the employees. In both cases there was a refusal upon the part of the employer to coerce its employees into forming a union for the purpose of making it a bargaining agent. In both cases there was picketing.

Relief to the employer or to employees is afforded by the National Labor Relations Act if there be a labor dispute or unfair labor practices. The fundamental purposes of the National Labor Relations Act are to put an end to labor disputes which tend to burden commerce and to terminate unfair practices which lead to labor disputes. The fundamental purpose of the Norris-LaGuardia Act is to preserve to labor the rights specified therein. Neither the National Labor Relations Act nor the Norris-LaGuardia Act should be circumscribed or limited by fine distinctions as to relationships of disputants. So far as the issue of the existence of a labor dispute is concerned, in my opinion the Lauf Case rules the case at bar.

The District Court exercised its jurisdiction because it found that there was a

---

[1] The definition of a "labor dispute" in the National Labor Relations Act contains the word "tenure" which is not included in the definition of "labor dispute" in the Norris-LaGuardia Act, and the definition of the National Labor Relations Act omits the phrase "or not" contained in the last clause of subsection (c) of Section 13 of the Norris-LaGuardia Act.

labor dispute within the terms of the National Labor Relations Act, but held that the provisions of subsection (h) of Section 10 of the Act, 29 U.S.C.A. § 160(h), operated to relieve its jurisdiction of the limitations imposed upon it by reason of Section 7 of the Norris-LaGuardia Act, 29 U.S.C.A. § 107. This was erroneous, but even if the decree of the District Court is sought to be supported as an exercise of equity jurisdiction under the provisions of the Sherman or Clayton Acts to relieve an oppressive burden upon interstate commerce nowhere in the record can be found any findings of fact by the court below as required by subsections (a), (b), (c), (d) and (e) of Section 7 of the Norris-LaGuardia Act. The denial of authority to a court of the United States to issue an injunction in any case "involving or growing out of a labor dispute" is conditioned as these subsections of the statute provide. Without making the findings of fact required by the statute, the District Court lacked the power to issue its injunction. Lauf v. E. G. Shinner & Co., supra, at pages 329, 330, 58 S.Ct. at pages 581, 582.

Moreover, without regard to the failure of the court below to support its preliminary injunction by findings of fact as required by the Norris-LaGuardia Act, those portions of the decree enjoining picketing without fraud or violence on the part of the appellants are within the express prohibition of subsection (e) of Section 4 of the Norris-LaGuardia Act, 29 U.S.C.A. § 104(e). Picketing or patrolling without fraud or violence is expressly included within the specific acts which may not be enjoined by Courts of the United States. Levering & Garrigues Co. v. Morrin, 2 Cir., 71 F.2d 284, certiorari denied, 293 U.S. 595, 55 S.Ct. 110, 79 L.Ed. 688.

In my opinion the question here presented is not one for the exercise of our discretion to grant or refuse a supersedeas. The question presented is the fundamental one of jurisdiction which must be determined in limine. In view of the fact that there is insuperable objection to the maintenance of the preliminary injunction in point of jurisdiction, the decree of injunction should be reversed and the cause remanded with appropriate instructions. Meccano, Limited v. John Wanamaker, 253 U.S. 136, 141, 40 S.Ct. 463, 465, 64 L.Ed. 822. See, also, Myers v. Bethlehem Corporation, 303 U.S. 41, 52, 58 S.Ct. 459, 464, 82 L.Ed. 638.