STANGARD DICKERSON CORPORATION v. UNITED ELECTRICAL RADIO & MACHINE WORKERS OF AMERICA, LOCAL 1218, et al.

Civ. No. 910.

District Court, D. New Jersey.

June 19, 1940.

Gilhooly & Yauch, of Newark, N.J., for complainant.

Samuel L. Rothbard, of Newark, N.J., for defendants.

FORMAN, District Judge.

For approximately ten years Andrew W. McCabe has been engaged in the refrigeration business as president of Dickerson Company, a New Jersey corporation. In November, 1939, the Stangard Dickerson Corporation was incorporated under the laws of the State of New Jersey for the manufacture and sale of refrigeration equipment with its principal place of business in the City of Newark, N. J. Andrew W. McCabe and Edna L. McCabe furnished the entire capital of said corporation. They, together with Richard P. McCabe, owned and controlled 51% of the stock. The remaining 49% is owned by Walter Raskin, who became a stockholder, director and officer of the Stangard Dickerson Corporation. He was formerly employed by the Standard Body Corporation, a New York Corporation, the stock of which was owned by several of his relatives. The McCabes never owned any stock in this corporation.

It appears that almost immediately after its incorporation the Stangard Dickerson Corporation contracted with the Standard Body Corporation of New York for the

manufacture specially to its order of a considerable number of ice boxes. These boxes had been ordered from the Stangard Dickerson Corporation which was not prepared to fill the order, and, hence, contracted with the Standard Body Corporation as aforesaid.

On March 1, 1940, the Standard Body Corporation of New York was adjudicated a bankrupt, and on March 5 and 6, 1940, the Stangard Dickerson Corporation purchased from the bankrupt estate a substantial amount of its equipment which it removed to its plant at Oliver Street, Newark, N. J. where it is making itself ready to embark in the manufacturing business. Subsequent to the removal of this equipment to Newark, the National Labor Relations Board at New York communicated with the Stangard Dickerson Corporation and advised it that charges had been made by the United Electrical Radio and Machine Workers of America, Local 1218, C. I. O., that the Standard Body Corporation discharged on February 26, 1940, all of its employees because of their union membership and activity, and that the corporation had refused to meet further with the representatives of its employees. On March 15, 1940, representatives of the Stangard Dickerson Corporation appeared before the Labor Board and denied liability for these charges. Negotiations between the Stangard Dickerson Corporation and union officials proceeded until March 18, 1940, but failed to result in any agreement between the Stangard Dickerson Corporation and the union. The corporation took the position that it was obligated to re-employ employees then presently working for the Dickerson Company, and those who had formerly worked for the Dickerson Company who had suffered suspensions from time to time because of business conditions, and that former employees of the Standard Body Company could not be given employment under such circumstances. Picket lines were formed on the afternoon of that day—March 18, 1940. The pickets bore signs alleging that employees had been locked out by the Stangard Dickerson Corporation, and that it refused to re-employ union employees, etc.

On April 1, 1940, the Stangard Dickerson Corporation filed a bill in the Court of Chancery of New Jersey, against the United Electrical and Machine Workers of America, Local 1218, C. I. O., and some twenty individuals who were engaged in the picketing activity, some of whom were officers of the Local. In addition to the facts above set forth the bill alleged that none of the men engaged in picketing and congregating about the street, sidewalk and in entrances adjacent to the plant of the Stangard Dickerson Corporation was its employees and had never been its employees; that it was still setting up its machinery in equipping its plant to commence operations; that it had not begun manufacturing, and that there was no strike of any of its employees. It charged that the defendants interfered with ingress and egress of merchandise moved to and from the plant and threatened and molested its employees. The bill prayed for relief against the activity of the defendants by way of injunction.

One of the defendants, Henry Heynick, filed a petition for the removal of the cause to this court on the ground of diversity of citizenship, complainant being a resident of New Jersey, and the defendant union being an unincorporated, voluntary association of more than seven members no one of whom is a resident of New Jersey, but all of whom are residents of New York. The other defendants filed their consents to join in this petition. The Court of Chancery of New Jersey denied the petition for removal and thereupon an exemplified copy of the proceedings was filed in this court together with defendant's motion that this court order a removal. Complainant moved that the cause should be remanded to the Court of Chancery of New Jersey.

Complainant resists removal on the following grounds:

1. The petition for removal is defective because only one of the defendants has applied for removal in a duly verified petition as required by statute. 28 U.S.C.A. § 72.

2. The petition for removal is unsupported by allegations of fact to show that $3,000, the jurisdictional prerequisite is involved.

3. A removal would deprive complainant of its substantive right under the law of New Jersey to an injunction, since such could not issue under the Norris-LaGuardia Act, 29 U.S.C.A. § 101 et seq.

It is noted that only one defendant, Henry Heynick, filed the petition for removal in the state court. The remaining defendants filed their consents to join in

that petition. It is claimed that it is necessary for all the defendants to actually join in the petition for removal and verification thereof, and that the consent to joinder as filed does not suffice. The only case cited in this connection is Chicago, Rock Island & Pacific Ry. v. Martin, 178 U.S. 245, 20 S.Ct. 854, 44 L.Ed. 1055, which holds that all defendants must join in the petition. That case throws no light on the procedure adopted in this case, and we have been unable to find illuminating authority on the point. It seems to us that the procedure utilized is a simple and effective means to adequately satisfy the requirement of the removal statute. The first objection that the petition for removal is defective is, therefore, overruled.

The petition for removal alleges that the value of the property complainant seeks to protect exceeds $3,000, and that the relief prayed for, if granted, would damage defendants in excess of $3,000. In support of their contention that this jurisdictional prerequisite is present the petitioners show that the Stangard Dickerson Corporation's complaint in the Chancery Court action averred that it had an investment in plant and equipment at its premises in Newark, N. J., amounting to $29,000, and cite the cases of Union Premier Food Stores, Inc. et al. v. Retail Food Clerks and Managers Union, 3 Cir., 98 F.2d 821, and Tri-City Central Trades Council, et al. v. American Steel Foundries, 7 Cir., 238 F. 728; Id., 257 U.S. 184, 42 S.Ct. 72, 66 L.Ed. 189, 27 A.L.R. 360, both of which involve injunctions in labor disputes. They also cite the cases of James Heddon's Sons v. Callender, D.C., 28 F.Supp. 643, and Campbell Baking Co. et al. v. City of Maryville, D.C., 31 F.2d 466.

In the case of Union Premier Food Stores, Inc., et al. v. Retail Food Clerks and Managers Union, supra, the court disposed of this problem by stating: "The amount involved in these proceedings exceeds $3,000 exclusive of interest and costs. The capital invested in plaintiffs' business exceeds $2,000,000 and the amount of business done annually approximates $20,000,-000." 98 F.2d 821, 822. The court observed that more than 50% of plaintiff's stock of goods was perishable, and that a continuance of the picket line would have destroyed its business within a few days. Such a condition is not demonstrated in the case before us. In fact, the complainant has not yet begun to function as a manufacturing plant.

The case of Tri-City Central Trades Council et al. v. American Steel Foundries, supra, involves an alleged threatened destruction of property. Therein, the court stated: "Defendants' claim that the court was without jurisdiction is without merit. The necessary diversity of citizenship appears. The amount involved exceeds $3,-000. It was not necessary that $3,000 worth of property should be destroyed before the federal court acquired jurisdiction. The alleged threatened damage far exceeded the statutory sum necessary to give the district court jurisdiction." 238 F. 728, 730. As in the case above, the court was enabled to find a threat of destruction to property consisting of a plant worth $1,000,000. This is not analogous to the instant case, because herein there is not alleged a threatened destruction of complainant's property.

In the case of James Heddon's Sons v. Callender, supra, the purpose of the suit was to enjoin the defendant from violating the stipulated retail prices in Fair Trade Contracts under a Minnesota law. The plaintiff alleged the jurisdictional amount as being present. This was challenged by the defendant, but no proof of want of jurisdiction was offered by him. An affidavit was filed by the plaintiff in which the affiant admitted that no loss had been suffered by the plaintiff until that time; that in the year 1938 its business in Minnesota amounted to $20,000, and in 1939 it would approximate that sum, but that if the threatened practice of cutting prices was carried out by the defendant the value of its trademarks and tradenames would be debased more than $3,000. The affidavits of the defendant dealt only with the fact that other persons had violated the price schedules. Under these circumstances the court chose to rest its jurisdiction on the unchallenged averment of the plaintiff and stated: " * * * The allegations of the complaint and affidavit of Mr. Wooster sustain the contentions of the plaintiff that this Court has jurisdiction. The motion to dismiss has challenged that jurisdiction, but no proof of want of jurisdiction has been offered by the defendant. The Court has no alternative but to accept the contentions of the plaintiff as to jurisdiction, and must necessarily rely upon the allegations of the complaint and the supporting affidavit of

the plaintiff as basis for jurisdiction herein. The allegations of the complaint show the requisite amount involved in this controversy. The plaintiff in its complaint alleges that its rights under the Minnesota Fair Trade practice contract, and its property rights in its trade name and trademark have been violated, and that the same in Minnesota will be debased and depreciated to an amount in excess of $3,000.00, exclusive of interest and costs, It was said in Zicos v. Dickmann et al., 8 Cir., 98 F.2d 347, at page 349: 'It is the value of the right which the petitioner seeks to protect against interference which measures the amount in controversy * * *.' Plaintiff has alleged that the value of its rights is in an amount in excess of $3,000.00, exclusive of interest and costs, and on the record as it stands, this Court must entertain jurisdiction of this suit." 28 F.Supp. 643, 645.

In the case before us the challenge is sharp and the presence of the jurisdictional amount is strongly controverted. Hence, there is no analogy between the cases.

In the case of Campbell Baking Co. et al. v. City of Maryville, supra, the question of whether the controversy involved the jurisdictional requirement of $3,000 was raised. It was shown that the net annual income from the business was about $375. This was capitalized by the court and held to produce proof that more than $3,000 was involved. But no such proof exists in our case, because the record fails to show that complainant has begun to do business.

The complainant cites the cases of S. S. Kresge Co. v. Amsler et al., 8 Cir., 99 F.2d 503, certiorari denied 306 U.S. 641, 59 S.Ct. 582, 83 L.Ed. 1041, and Zicos v. Dickmann, 8 Cir., 98 F.2d 347, in support of its position that the jurisdictional requirement does not exist here.

In the former case there was a labor dispute accompanied by picketing of plaintiff's store containing a stock of merchandise valued at $134,000. In addition to this fact decrease in sales during the dispute was shown. The court, however, held that since the plaintiff was not prevented from prosecuting its business, the value in controversy was not the net worth of the business, but was the profit it might reasonably have anticipated "from the sale of the merchandise represented by the decrease in the volume of sales" [99 F.2d 506]. This was not shown, and, hence, the court held it was without jurisdiction.

In the case of Zicos v. Dickmann the enforcement officers of the City of St. Louis, Missouri, confiscated some of the mint vending machines belonging to Zicos and threatened to seize all other such machines and his stock of mints in their jurisdiction. He sought to enjoin this action by a suit in equity in the federal court. His bill of complaint was dismissed. The appellate court in considering the jurisdictional features of the case noted that the bill of complaint contained no allegation as to the right of the petitioner to conduct his business in the City of St. Louis. He alleged merely that he had an investment of some $6,000 in his business in that city and that after the seizure of one of his machines and several threats had been made to confiscate two others he withdrew his investment and ceased operations in St. Louis. The court stated: "That the value of his right to continue in business in St. Louis is worth more than $3,000 does not appear from the facts stated. Since his mint vending machines (with the exception of one which was seized) have been withdrawn, it appears that they are no longer in jeopardy and their value would certainly not measure the sum or value of the matter in controversy." 98 F.2d 347, 349. The court held that the case should have been dismissed for want of jurisdiction. The case, however, does not sustain the contention that the jurisdictional monetary prerequisite can be measured by the investment, because the plaintiff had withdrawn such investment at the time of the proceeding.

A review of all of the above cases indicates that none is precisely controlling.

■■ This jurisdictional issue may not be lightly disposed of because it is the duty of the court to refrain from extending its authority except where jurisdiction is conferred upon it, and it is incumbent upon the petitioners herein to convince the court that the jurisdictional requirement is fulfilled. The Court observed in the case of Wilson v. Republic Iron Co., 257 U.S. 92, 97, 42 S. Ct. 35, 37, 66 L.Ed. 144, as follows: "If a removal is effected, the plaintiff may, by a motion to remand, plea, or answer, take issue with the statements in the petition. If he does, the issues so arising must be heard and determined by the District Court (Stone v. South Carolina, 117 U.S. 430, 432, 6 S.Ct. 799, 29 L.Ed. 962; Chicago, Rock Island & Pacific Ry. Co. v. Dowell, 229 U.S. 102, 113, 33 S.Ct. 684, 57 L.Ed.

1090; Chesapeake & Ohio Ry. Co. v. Cockrell, supra, 232 U.S. [146] 152, 154, 34 S.Ct. 278, 58 L.Ed. 544), and at the hearing the petitioning defendant must take and carry the burden of proof, he being the actor in the removal proceeding (Carson v. Dunham, 121 U.S. 421, 425, 426, 7 S.Ct. 1030, 30 L.Ed. 992)."

The burden of proving this jurisdictional averment rests equally upon the defendant who seeks to remove as upon the plaintiff in an original action in the United States Court, and the following language of the United States Supreme Court in the case of McNutt v. General Motors &c. Corp., 298 U.S. 178, 189, 56 S.Ct. 780, 785, 80 L.Ed. 1135, is relevant: "The prerequisites to the exercise of jurisdiction are specifically defined and the plain import of the statute is that the District Court is vested with authority to inquire at any time whether these conditions have been met. They are conditions which must be met by the party who seeks the exercise of jurisdiction in his favor. He must allege in his pleading the facts essential to show jurisdiction. If he fails to make the necessary allegations he has no standing. If he does make them, an inquiry into the existence of jurisdiction is obviously for the purpose of determining whether the facts support his allegations. In the nature of things, the authorized inquiry is primarily directed to the one who claims that the power of the court should be exerted in his behalf. As he is seeking relief subject to this supervision, it follows that he must carry throughout the litigation the burden of showing that he is properly in court. The authority which the statute vests in the court to enforce the limitations of its jurisdiction precludes the idea that jurisdiction may be maintained by mere averment or that the party asserting jurisdiction may be relieved of his burden by any formal procedure. If his allegations of jurisdictional facts are challenged by his adversary in any appropriate manner, he must support them by competent proof. And where they are not so challenged the court may still insist that the jurisdictional facts be established or the case be dismissed, and for that purpose the court may demand that the party alleging jurisdiction justify his allegations by a preponderance of evidence. We think that only in this way may the practice of the District Courts be harmonized with the true intent of the statute which clothes

them with adequate authority and imposes upon them a correlative duty."

Substantially the same observations are made in the case of Hague v. C. I. O., 307 U.S. 496, 507, 508, 59 S.Ct. 954, 960, 83 L.Ed. 1423. Therein the Court stated:

"Section 24 of the Judicial Code, 28 U.S.C.A. § 41, confers original jurisdiction upon District Courts of the United States. Subsection (1) gives jurisdiction of 'suits of a civil nature, at common law or in equity, * * * where the matter in controversy exceeds, exclusive of interest and costs, the sum or value of $3,000' and 'arises under the Constitution or laws of the United States.'

"The wrongs of which respondents complain are tortious invasions of alleged civil rights by persons acting under color of state authority. It is true that if the various plaintiffs had brought actions at law for the redress of such wrongs the amount necessary to jurisdiction under Section 24(1) would have been determined by the sum claimed in good faith. But it does not follow that in a suit to restrain threatened invasions of such rights a mere averment of the amount in controversy confers jurisdiction. In suits brought under subsection (1) a traverse of the allegation as to the amount in controversy, or a motion to dismiss based upon the absence of such amount, calls for substantial proof on the part of the plaintiff of facts justifying the conclusion that the suit involves the necessary sum. The record here is bare of any showing of the value of the asserted rights to the respondents individually and the suggestion that, in total, they have the requisite value is unavailing, since the plaintiffs may not aggregate their interests in order to attain the amount necessary to give jurisdiction. We conclude that the District Court lacked jurisdiction under Section 24(1)."

Petitioners argue that the jurisdictional requirement is shown by the complaint itself. We fail to find therein any valuation of the alleged right the complainant in the chancery action seeks to protect. It alleges a value of $29,000 in plant and equipment. In fact, the complainant even now insists that its manufacturing business has not as yet begun. Therefore, we can find no basis from which even inference may be drawn that damage has been occasioned or has been threatened which is susceptible of translation into

dollars. Petitioners also submit that the statutory requirement may be found in the value of the right of the petitioners to work and to their jobs. Again, no basis is laid so that the value of such right may be established. Therefore, the objection that the allegation of the petition for removal is unsupported by evidence of the presence of the requisite jurisdictional amount must be sustained.

In these circumstances it is unnecessary to discuss the third point raised and the case will be remanded.

■ Petitioners have directed the court's attention to the recent rulings on April 22, 1940, of the United States Supreme Court in the cases of Thornhill v. State of Alabama, 60 S.Ct. 736, 84 L.Ed. ——, and Carlson v. People of the State of California, 60 S.Ct. 746, 84 L.Ed. ——, which declared against the infringement of the right to picket as an abridgement of the constitutional right of free speech. They suggest that these holdings overrule decisions of the New Jersey Courts that may be inconsistent with them and that it, therefore, follows that not even in the Court of Chancery of New Jersey may the complainant now obtain the relief sought. Hence, they submit, this court should take "jurisdiction of the cause and proceed to determine the matter on its merits". Such authority in this court could only spring from 28 U.S.C.A. § 41 (14) as follows:

"The district courts shall have original jurisdiction as follows: * * *

"Of all suits at law or in equity authorized by law to be brought by any person to redress the deprivation, under color of any law, statute, ordinance, regulation, custom, or usage, of any State, of any right, privilege, or immunity, secured by the Constitution of the United States, or of any right secured by any law of the United States providing for equal rights of citizens of the United States, or of all persons within the jurisdiction of the United States."

· Since the petitioners here are not deprived under "color of any law, statute, ordinance, regulation, custom, or usage" of New Jersey or as yet by any subsisting court order, action by this court under the state of this case would be anticipatory and premature. Therefore, this consideration does not affect our opinion as expressed herein.