This action was instituted by writ, summons and complaint dated and served on September 15, 1941, wherein the plaintiff prays: (1) an injunction; (2) $2,000 damages; and (3) such other relief as to equity may appertain. The action is made returnable to court on the first Tuesday of October, 1941. On said September 15, 1941, the undersigned issued an order requiring the named defendants to appear on September 16, 1941, at a designated hour, and show cause why a temporary injunction should not issue.
A New York attorney appeared on behalf of the defendants on said September 16, 1941, and the matter was continued by agreement of counsel until September 19, 1941, upon the assurance of defendants' counsel that the picket line at the plaintiff's New Haven store would be withdrawn pending decision on the question of a temporary injunction. Said picket line was in fact withdrawn.
On September 19, 1941, the first of a series of hearings terminating on September 30, 1941, was had before me. The New York attorney turned over the defense in favor of local counsel. At the first hearing plaintiff's counsel stated that it was his wish to amend later the first prayer set forth in the complaint — "an injunction" — to read substantially in the form of the amendment now on file — "an order enjoining the defendants or its representatives from picketing or patrolling the premises of the plaintiff." The proposed amendment has now been filed. *Page 110 
The undersigned and counsel treated the hearings extending from September 19, 1941 to September 30, 1941, as having for their object the propriety of considering whether or not a temporary injunction should issue, based upon the facts adduced and the law cited by counsel for my consideration.
The questions herein presented, by the nature of things, evolve around chapter 309a of the 1939 Supplement to the General Statutes, Revision of 1930, entitled "Injunctions in Labor Disputes." Counsel are agreed that the vital issue is whether or not there is a "labor dispute" within the meaning of section 1420e(c) of said chapter 309a. To date our Supreme Court has been called upon to consider only one case (Loew's Enterprises, Inc. vs. International Alliance of T. S.E.,127 Conn. 415) in which chapter 309a was in any way involved. The facts in the Loew case are not analogous to the facts of the instant case. Nevertheless, the Supreme Court's conclusion (p. 421) that "there was still a labor dispute between the parties as defined in § 1420e" may well be said to be helpful from the standpoint of the plaintiff in the instant case in the light of an express finding herein that no "labordispute" is presently in existence between the plaintiff and its employees.
This memorandum is abbreviated since I have concluded, on the law and the facts, that the plaintiff is entitled to the issuance of a restraining order in the nature of a temporary injunction. Pursuant to section 1424e there is annexed hereto and made a part hereof a "finding of facts." The finding as made is somewhat patterned upon the form prescribed in an appeal to our Supreme Court from a judgment in a case tried to the court, and consists of two parts: (1) facts found; and (2) conclusions reached. The finding herein and the conclusions, comprise in all 48 paragraphs.
In passing it may be noted that I have examined an innumerable number of cases which have been considered in recent years by Federal and state courts. Enumerating and specifying the cases would serve no useful purpose. General reference, however, is made to the annotations appearing in 127 A.L.R. 868; 124 id. 751; 120 id. 316; 106 id. 361; 97 id. 1333. See, also, the memorandum of the trial court (King, J.) in the Loew case, 8 Conn. Sup. 324, in which there appears a tabular form a comparison of certain sections of *Page 111 
the Federal Norris-LaGuardia Act with our own Act (Supp. [1939] chap. 309a).
The Federal cases, in the main, are concerned with Federal legislation such as the Norris-LaGuardia Act (29 U.S.C.A. §§ 101-115), the Wagner-Connery Labor Relations Act (29 U.S.C.A. §§ 151-166), and the earlier Clayton Act (28 U.S.C.A. §§ 381-390). The Supreme Court of the United States in Senn. vs. Tile Layers Protective Union, 301 U.S. 468,81 L.Ed. 1229, 57 S.Ct. 857, reviewed the provisions of the Wisconsin Labor Code which bear a similarity to certain sections in our chapter 309a, and divided five to four in affirming the action of the Supreme Court of Wisconsin (a divided court, 222 Wis. 383, 268 N.W. 270), in upholding the dismissal of the plaintiff employer's bill for an injunction. In any event the opinion of the Supreme Court of the United States goes no further than to hold that a "labor dispute" within the meaning of the Wisconsin Code is solely a matter of "state law." The facts in the Wisconsin case are not sufficiently on a par with the facts of the instant case, and accordingly has not been permitted to control the outcome herein.
In determining the vital and controlling issue in favor of the plaintiff on a finding that there is no "labor dispute" present and in existence between the plaintiff and its employees as to sanction picketing by the defendants, their representatives, agents and employees, of the plaintiff's premises, etc., I have accepted the reasoning contained in the opinions in the following cases: Donnelly Garment Co. vs. InternationalLadies' Garment Workers' Union, 20 F. Sup. 767,769; same parties, 21 F. Sup. 807, 813 (vacated on procedural grounds, 304 U.S. 243, 82 L.Ed. 1316,58 S.Ct. 875); Union Premier Food Stores vs. Retail Food C. M.Union, 98 F.2d 821.
The opinion of our own Supreme Court in the Loew case is deemed by me to be important on at least two aspects set forth in the finding herein. Two quotations from the opinion will suffice for the purpose of this memorandum.
1. "An action for an injunction being equitable, whether or not a plaintiff is entitled to relief is determined, not by the situation existing when it is begun, but by that which is developed at the trial." (p. 419.) *Page 112 
2. "The act [chapter 309a] does not deny to courts the power to hear and determine actions seeking injunctions in labor disputes but only limits them in the exercise of that power. The essence of the act is not to take away from courts jurisdiction, in the usual meaning of that word, over actions seeking injunctions in labor disputes but to forbid them to issue injunctions of a certain character or unless certain conditions are found to exist." (p. 420.)
See, also, Levy Devaney, Inc. vs. International PocketbookWorkers Union, 114 Conn. 319, 323, 324, decided before the enactment of chapter 309a.
The evidence has disclosed that the defendants are affiliated with the American Federation of Labor. I take judicial notice of the fact that over a period of many years organized labor has accomplished much good for the working man. Better working conditions, shorter hours, better wages, have resulted from the intercession of organized labor under the banner of the American Federation of Labor. Nevertheless, the facts and circumstances of this case are such that to permit the defendants, their representatives, agents and employees, even with the endorsement of the American Federation of Labor, to continue their program of picketing and patrolling the plaintiff's premises, would be contrary to the best of traditions and to the American way of life. Right is right and wrong is wrong, irrespective of personalities and powerful organizations.
Pursuant to this memorandum and finding hereto annexed, and made a part hereof, plaintiff's counsel is directed to prepare a restraining order in the nature of a temporary injunction, restraining and enjoining the defendants, their representatives, agents and employees, from all manner of picketing and/or patrolling plaintiff's premises at No. 136 Congress Avenue, New Haven, and present the same for my approval as to form and for signature. Such order is to remain in full force and effect until further order of the Court of Common Pleas.
 FINDING OF FACTS AND CONCLUSIONS REACHED
FIRST: The following facts are found:
1. Plaintiff is a corporation organized and existing by virtue of and under the laws of the State of Connecticut, and is *Page 113 
engaged in the retail grocery business, conducting and operating grocery stores in the City of New Haven (136 Congress Ave.), Town of Hamden (870 Dixwell Ave.), City of Derby (170 Main St.), and City of Waterbury (258 So. Main St.), selling foods and groceries to consumers residing in the vicinity of said stores, and doing an intrastate business.
2. In the course of conducting and operating said retail grocery business, and stores, the plaintiff employs 11 men either as clerks in its said stores, or managers of said stores, all of whom are now employed, and have regularly been employed by plaintiff and are presently actively engaged in said employment, either as such clerks or as such managers.
3. In plaintiff's New Haven store (136 Congress Ave.) there are three employees, including the manager; in its Hamden store (870 Dixwell Ave.) there are four employees, including the manager; in its Derby store (170 Main St.) there is one employee who also acts as manager; and in its Waterbury store (258 So. Main St.) there are three employees, including the manager.
4. Not a single one of plaintiff's employees has left its employment of recent date, and not a single one of its employees has been, or now is, on strike.
5. All of plaintiff's employees, totaling 11 in number, as aforesaid, are now employed by the plaintiff, and all of said employees are entirely and completely satisfied with all of the terms and conditions of their employment, including hours of work and wages.
6. No dispute of any character whatsoever presently exists between the plaintiff, on the one hand, and any or all of its employees, on the other hand.
7. On Sunday morning, August 24, 1941, all of plaintiff's employees assembled at the warehouse of the "Grocers Outlet, Inc." on Vernon Street, New Haven, for the purpose of discussing with their counsel the formation of an association of their own, as well as the terms of a working agreement with their employer, the plaintiff.
8. The president of the plaintiff company, Eli Rosner, who has a certain interest in said "Grocers Outlet, Inc." had given permission to plaintiff's employees to use said warehouse for their meeting on said August 24th. *Page 114 
9. Notice of said meeting was given to the plaintiff's employees on August 23, 1941, by the managers of each of plaintiff's stores where such employees were employed; they were asked by their managers to attend said meeting and the purpose of the meeting was briefly outlined to them by said managers.
10. The meeting on said August 24, 1941, got under way shortly after ten o'clock in the morning, and lasted about three and one-half hours.
11. Plaintiff's president, Eli Rosner, was also at said warehouse on Vernon Street, New Haven, where said meeting was held on said August 24th, but remained in a room other than the room where plaintiff's employees gathered, and took no part in the discussions of his employees respecting the formation of their association, or the contemplated terms of a working agreement being considered by them in a body, but at noonday was advised as to the terms of a proposed working agreement, and interposed only one objection relative thereto, namely, the question of the length of an annual vacation, which aspect in a brief mutual discussion thereafter was straightened out to the satisfaction of plaintiff's employees and said president of the plaintiff company.
12. Attorney George DiCenzo of New Haven, pursuant to a telephone request by the manager of plaintiff's New Haven store on the early evening of August 23, 1941, attended the aforesaid meeting of the plaintiff's employees on Sunday, August 24, 1941, and took down notes at said meeting relative to matters to be incorporated in, and made a part of the articles of association (see dfs' Exhibit 1), and the working agreement between plaintiff's employees and the plaintiff (see pl's Exhibit A).
13. Attorney DiCenzo, on said August 24, 1941, in addition to representing plaintiff's employees, was authorized on said date by Mr. Rosner, plaintiff's president, to also act on behalf of the plaintiff on matters pertaining to said working agreement.
14. Prior to said August 24, 1941, Attorney DiCenzo had no professional or other connection either with the plaintiff, or with Mr. Rosner, its president.
15. Although Attorney DiCenzo in fact became the attorney *Page 115 
for the plaintiff on matters relating to said agreement and connected therewith, on and after August 24, 1941, his dual role was known to all the parties in question (plaintiff's employees and plaintiff), and sanctioned and approved by them.
16. All plaintiff's employees affixed their signatures to a paper on August 24, 1941, to signify their approval of the articles of association agreed upon by them on said date, although said articles were not in fact typed up until some time later that week; plaintiff's president, Eli Rosner, and Guido Scalise as president of the association, affixed their names to a blank piece of paper on said August 24, 1941, as indicating their approval to the outline of the working agreement between the plaintiff and said association, although in fact the agreement itself, the terms of which were approved by the parties on said date, was not in fact typed out until later in said week.
17. Notwithstanding the fact that the articles of association (dfs' Exhibit 1) and the working agreement between plaintiff's employees and the plaintiff (pl's Exhibit A) are dated August 23, 1941, the terms and provisions contained in said documents are those actually considered and agreed upon by the respective parties, independently, on Sunday, August 24, 1941, at which time they affixed their signatures thereto. In this connection see defendants' Exhibit 2 de the founding of the association in question on August 24, 1941, at 9 Vernon Street, New Haven, contained in minutes of said association.
18. The employees of the plaintiff, and two employees of another employer ("Washington Cash Grocery Store" of New Haven), prior to the time of the instant trial, formed the aforesaid association among themselves known as "The Retail Grocers' Clerks and Drivers' Association of New Haven", and said association was formed of their own free will and choosing, and without the interference, suggestion, domination or persuasion of any person, or persons, nor of the plaintiff herein, its officers and agents.
19. After the formation of said association said members thereof, numbering all of the employees of the plaintiff herein, elected officers of their own choosing, prescribed rules and by-laws under which they presume to exist as an association, and all of the employees of the plaintiff are presently members of said association and in good standing. (See dfs' Exhibits 1 and 2.) *Page 116 
20. In pursuance to the organization of said association, the articles of association have been adopted and ratified by the members thereof among which are numbered all of the employees of the plaintiff. (See dfs' Exhibits 1 and 2.)
21. The purposes of said association are substantially as set forth in the articles of association, namely, the general betterment of the conditions and terms of the employment of the members of said association, and said association is now in fact in active existence and the members thereof plan to become incorporated under State law when their finances permit.
22. The president of said association, acting on behalf of said association and duly authorized, negotiated an agreement with the plaintiff and that said agreement contains the terms and conditions of employment of all of the employees of the plaintiff. (See pl's Exhibit A; see dfs' Exhibit 2; see par. 16 herein.)
23. Said agreement was in fact entered into and was consented to and ratified by the members of said association among whom are all of the employees of the plaintiff.
24. The terms of said agreement are presently entirely satisfactory to all of the employees of the plaintiff, and said agreement was entered into by said association and its members voluntarily of its, and their, own free will and choosing, and without any persuasion, interference, suggestion or domination of any person or persons, nor of the plaintiff herein, its officers and agents.
25. The formation of said association had been considered by plaintiff's employees over the past two years.
26. All of the employes of the plaintiff definitely and unequivocally decline and refuse to become members of any other association or union, and more particularly decline and refuse to be members of the defendant Local affiliated with the American Federation of Labor.
27. None of the employees of the plaintiff are now members of any other union or association other than members of "The Retail Grocers' Clerks and Drivers' Association of New Haven", and more particularly are not now members of the defendant Local affiliated with the American Federation of Labor. *Page 117 
28. Sometime during the latter part of the month of August, 1941, the defendant Dominick Giacalone, a representative of the defendant Local 1507, affiliated with the American Federation of Labor, together with another representative of said Local, one Ammond, made a demand upon Eli Rosner, president of the plaintiff corporation, to the effect that the plaintiff enter into an agreement with said Local, affiliated with the American Federation of Labor, it being proposed that said agreement provide the terms and conditions of the employment of all the employees of the plaintiff, whereupon the said Eli Rosner responded that the plaintiff had already entered into an agreement with all of its employees through another association, and therefore could not enter into a further agreement with the defendant Local, affiliated with the American Federation of Labor, covering the same employees and the same subject matter.
29. Thereafter said defendant, Dominick Giacalone, and the said representative Ammond, requested permission to examine the terms of the agreement referred to by Eli Rosner, the president of the plaintiff company, and were granted such permission, and did in fact examine the terms of said agreement.
30. Thereafter said defendant, Dominick Giacalone, and the said Ammond, as representatives aforesaid, served notice upon the plaintiff herein that if the said plaintiff did not enter into an agreement with the said defendant Local, affiliated with the American Federation of Labor, the said Dominick Giacalone and the said defendant Local would cause the stores of the plaintiff to be picketed.
31. Thereafter, and without further notice, on the morning of September 15, 1941, the defendants did in fact station two pickets in the front of the Congress Avenue store of the plaintiff, in New Haven, and said pickets patrolled back and forth in the front of said store and while patrolling carried placards bearing the inscription "Unfair to Organized Labor" and on the other side of said placards the letters "A.F. of L."
32. During said day of September 15, 1941, and on the morning of the following day, September 16th, the said pickets were noisy and boisterous in their proclamations concerning the plaintiff, profane language was used by said pickets while patrolling the front of the plaintiff's store on Congress Avenue, *Page 118 
and such profanity was directed to customers of the plaintiff; false statements were made by the pickets during the course of said patrolling substantially as follows: "this place is a sweatshop"; "we are going to break a company union"; "in this store the boss pays his help in the dark"; "in this store the boss gives his men a raise with one hand and takes it away with the other hand"; "in this store there exists a boss' union"; "the boss formed his own company union, he is the president and he has all the say."
33. These statements were in fact untrue and false, and in spite of their untruthfulness and falsity said pickets during the course of their patrolling continued the repetition of said statements.
34. People congregated in the front of said plaintiff's store requiring police supervision and the presence of police officers was requested by the plaintiff and police officers in fact were on hand during said picketing.
35. The plaintiff's Congress Avenue store is located in an Italian area and the remarks of the pickets caused some confusion in the general vicinity of the store.
36. Such picketing was not peaceful and was unlawful, and furthermore, it was so unlawful as to indicate that the pickets stationed by the defendants did not intend to use their rights, if they had any in this matter, in a lawful manner, and it is reasonably to be expected that such unlawful conduct will continue if said picketing and patrolling continues.
37. The tendency of said picketing and patrolling, is to undermine the plaintiff's business, goodwill, and reputation for fair dealing with its employees, and such results are calculated by the defendants.
38. In the middle of August, 1941, three of plaintiff's employees at its Hamden store were approached by the defendants for the purpose of becoming members in the defendant Local, affiliated with the American Federation of Labor; although said employees at said time signed application blanks for membership, they have since indicated their unwillingness to become members of the defendant Local in any capacity whatsoever, and their declination as to membership was known to the defendants on or before September 15, 1941, and in any event was known to said defendants at the commencement of the hearings in said case. *Page 119 
39. In dealing with its employees the plaintiff has at all times acted in good faith, and is now so acting.
40. The plaintiff's employees, to a man, do not want to have any connection with the defendant Local and/or with the American Federation of Labor.
41. Prior to the commencement of these proceedings the plaintiff notified in writing the Labor Commissioner for the State of Connecticut of its willingness to submit the problem to arbitration and if any dispute existed it would be willing, and is still in fact willing, to submit such dispute, if any such dispute exists, to the said labor commissioner for arbitration. (See plaintiff's Exhibits B and C.)
42. Greater injury would be inflicted upon the plaintiff by the denial of relief than would be inflicted upon the defendants by granting relief.
43. The plaintiff has no adequate remedy at law.
44. The defendants are determined in any and all events to force and compel the plaintiff and its employees to recognize the defendant Local and to enter into an understanding with it and with the American Federation of Labor.
45. Plaintiff's employees are equally determined, and of their own volition, not to become identified with the defendant Local and with the American Federation of Labor.
SECOND: The following conclusions have been reached:
46. The defendants, without color of right, and against the peace, have picketed and patrolled the plaintiff's premises at 136 Congress Avenue, New Haven, on September 15 and 16, 1941, in a loud and boisterous manner, advertising that a "labor dispute" existed, when the fact is otherwise.
47. There is no "labor dispute" in existence between the plaintiff and its employees within the meaning of section 1420e of chapter 309a of the 1939 Supplement to the General Statutes.
 48. Under all the facts and circumstances, the plaintiff is entitled to have issued a restraining order, in the nature of a temporary injunction, restraining and enjoining the defendants, their representatives, agents and employees, from all manner of picketing and/or patrolling the plaintiff's premises at No. 136 Congress Avenue, New Haven.